United Auto Workers Local 1155 ("the employer")[1]
appeals from a judgment of the Walker Circuit Court awarding Larry *Page 357 
Fortenberry ("the employee") permanent-total-disability benefits under the Alabama Workers' Compensation Act, Ala. Code 1975, §25-5-1 et seq. ("the Act"). Because we conclude that proper notice under the Act was not provided, we reverse the judgment and remand the cause for the entry of a judgment dismissing the employee's action.
The record reflects the following facts. The employee has a history of working as an airplane mechanic, most recently for PEMCO Aeroplex, Inc. ("PEMCO"), in Birmingham. While employed at PEMCO, the employee was a member of the employer, which is a local unit of an international labor union. In 1993, while serving as vice president of the employer, the office of president became vacant, and the employee assumed that office. In doing so, he became a compensated employee of the employer and took a leave of absence from his employment at PEMCO; however, the employee continued to be covered by insurance, including medical insurance, secured by PEMCO for its employees. The employee testified that his work for the employer involved conducting negotiations with PEMCO as necessary and generally providing assistance to the employer's members. The employee testified that in 1993 he had helped negotiate a three-year labor contract between PEMCO and the employer and that that agreement was set to expire in 1996, at the end of his term as president.
In 1993, after assuming the presidency of the employer, the employee suffered a stroke. After that stroke, the employee underwent physical rehabilitation in order to re-learn how to walk, was placed on blood-thinning medication, and exhibited permanent weakness in his left side; however, the employee was ultimately able to resume his work for the employer. The record does not reflect that the employee sought temporary or permanent benefits under the Act from the employer with respect to that stroke. However, in either 1994 or 1995, while in the line and scope of his employment with the employer, the employee was involved in an automobile collision that resulted in injuries for which he sought, and received, benefits under the Act; as to that incident, the employee testified that he had notified the employer's secretary that he had suffered a work-related injury.
The employee was a candidate in an election in May 1996 to retain the office of president of the employer beyond Saturday, June 8, 1996, the last day of his term of office; however, because he was not one of the two candidates receiving the most votes in the first round of balloting in April or May 1996, he was eliminated from contention well before that date. The employee indicated in his testimony that in the last few days of his term of office he had heard from PEMCO representatives concerning PEMCO's plans for the next three-year labor contract (which was to be negotiated by the employee's successor) and that he had been involved in an investigation concerning a member whose employment with PEMCO had been terminated.
The employee testified that, on Friday, June 7, 1996, he reported to work at 7:00 a.m., made coffee, and did some residual paperwork; later that morning, the employee drove his automobile one-half mile to the office of PEMCO's personnel director and, one hour later, returned to the employer's office. The employee then began gathering and packing his personal effects from the employer's office in order to make room for his successor as president. The employee testified at trial that he had transported several loaded boxes from his upstairs office to his automobile, which required carrying at least three *Page 358 
loads downstairs, when he returned to the office to request a garbage bag from one of his coworkers. At that moment, the employee testified, the employee began experiencing the symptoms of his second stroke. The employee was then transported to a Birmingham hospital to undergo treatment for that stroke.
The record contains no document evidencing that the employee provided written notice to the employer of a potential work-related accident within 90 days after his second stroke. In contrast, the record indicates that on June 14, 1996, one week after that stroke, the employee completed a claims form seeking sickness-and-accident benefits under a policy of insurance held by PEMCO; on that claims form, the employee answered "no" to a question asking whether the employee had filed, or intended to file, a claim seeking workers' compensation benefits based upon an "on-the-job injury or illness."
At trial, after the employee had explained on cross-examination about how he had provided notice to the employer's secretary after his employment-related automobile collision one or two years before his second stroke, the following testimony was elicited:
 "Q. With respect to [the June 7, 1996,] stroke, that kind of procedure never took place, did it?
"A. I wasn't in a position to notify anybody.
 "Q. Okay. And you didn't notify anybody about claiming that this stroke was job related?
 "A. I did somewhere along the line because we're here.
"Q. But you don't know when?
"A. I don't recall when, no.
"Q. And you don't know how it was done?
"A. No, I don't. Sorry.
". . . .
 "Q. And does it say on [the sickness-and-accident claims form], `Have you or do you intend to file a claim for workers' compensation due to this being an on-the-job injury or illness,' and you checked no; is that right?
"A. Yeah, probably at that time, I did not.
 "Q. But it is your understanding that in order for you to get sick and accident, which you got, you couldn't also have a workers comp recovery?
"A. Yes.
 "Q. And you got sick and accident benefits from PEMCO?
"A. Yes.
"Q. How long did that last?
"A. A year, I think."
The employee did not return to work for the employer or for PEMCO. Rather, on June 4, 1998, he filed a civil action seeking an award of benefits under the Act with respect to his second stroke. The employer answered the complaint and, in addition to denying that the employee had suffered an accident or an occupational disease covered by the Act, averred that the employee had not given proper notice under the Act of the existence of a compensable injury. The employer moved for a summary judgment on the issue whether the employee's second stroke arose out of and occurred in the course of his employment; however, the trial court did not rule on that motion until after holding an ore tenus proceeding. The trial court entered a judgment in which that court concluded that the employee was permanently and totally disabled as a result of the second stroke; that the stroke was caused by his employment with the employer (specifically, by "physical and mental stress on the day that he *Page 359 
suffered his stroke"); and that the employee was entitled to accrued compensation benefits, plus future compensation "for the remainder of [his] life" and medical benefits "for and during the remainder of [his] lifetime." In doing so, the trial court summarily stated that the employer "had actual notice of" what it alternately termed the employee's "injury" or "event."
On appeal, the employer has raised three issues. The employer contends that the employee did not demonstrate legal or medical causation by substantial evidence, that the employee failed to provide notice of his claim under the Act, and that the trial court could not properly award benefits under the Act for the remainder of the employee's life (as opposed to the duration of his disability). We conclude that the employer's contention regarding notice is meritorious and dispositive of the appeal. We apply the standard of review generally applicable to workers' compensation judgments: although pursuant to § 25-5-81(e)(2), Ala. Code 1975, "[w]e will not reverse a trial court's judgment based on factual findings in a workers' compensation case if those findings are supported by `substantial evidence,'" the trial court's legal conclusions are, under § 25-5-81(e)(1), "afforded no presumption of correctness, and this court reviews those conclusions de novo." United States Steel Corp. v.McBrayer, 908 So.2d 947, 951 (Ala.Civ.App. 2005).
The pertinent notice provisions in the Act are contained in §25-5-78, Ala. Code 1975. That section provides that "an injured employee or the employee's representative, within five days after the occurrence of an accident, shall give or cause to be given to the employer written notice of the accident." Failure to give notice, in the absence of "physical or mental incapacity, other than minority, fraud or deceit, or equal good reason," will defeat a claimant's entitlement to medical benefits and compensation accrued before notice is ultimately provided. Id.
However, § 25-5-78 also provides that "no compensation shall be payable unless written notice is given within 90 days after the occurrence of the accident or, if death results, within 90 days after the death" (emphasis added). Thus, while a failure to notify an employer of an accident within 5 days of its occurrence may be excusable under certain circumstances, and will work only a partial forfeiture of benefits, a failure to effect notice within 90 days is an absolute bar to recovery under the Act. Seegenerally Ex parte Murray, 490 So.2d 1230, 1232-33 (Ala. 1984). "The employee has the burden of proving that the employer had notice or knowledge of the injury." Wal-Mart Stores, Inc. v.Elliott, 650 So.2d 906, 908 (Ala.Civ.App. 1994).
Although § 25-5-78 requires "written notice," this court and our Supreme Court have held that "actual" notice to an employer will suffice. See Ex parte Brown Root, Inc., 726 So.2d 601,602 (Ala. 1998) (stating that "written notice is not required if the employer had actual knowledge that the employee was injured in the scope of his or her employment" and citing Elliott,650 So.2d at 908). The employee claims that the employer's financial secretary, who observed the employee after he had slumped against a wall following his second stroke and who telephoned for medical assistance, had "actual notice" of the existence of a injury compensable under the Act as of the moment that the employee suffered that stroke.[2] The employee attempts to bolster that claim by *Page 360 
averring, without citation to legal authority or to the record, that the secretary also knew, or had "reason to know," that the employee had undergone stress in his final days as president of the employer.
We are constrained to reject the employee's expansive interpretation of the concept of "actual" notice under the Act. In Ex parte Brown Root, the Supreme Court opined that "[t]he employer must have actual knowledge that the employee's injury was connected to the employee's work activities," in order for "actual" notice to exist; in contrast, "`[t]he fact that an employer is aware that an employee [suffers from] a medical problem is not, by itself, sufficient to charge the employer with actual knowledge.'" 726 So.2d at 602 (quoting Russell Coal Co.v. Williams, 550 So.2d 1007, 1012 (Ala.Civ.App. 1989)); seealso 7 Arthur Larson Lex K. Larson, Larson's Workers'Compensation Law § 126.03[1][b] (2005), and 2 Terry A. Moore,Alabama Workers' Compensation § 22.11 (1998) (employer "must have actual knowledge of information that would lead a reasonable person to believe that an injury had occurred within the course of the employment" (footnote omitted)). Thus, in Ex parte Brown Root, the Alabama Supreme Court reversed this court's affirmance of a judgment awarding benefits under the Act based upon the death of a construction supervisor from a "dissecting aortic aneurysm" that had arisen one hour after he had inspected the construction of a tube conveyor section on a day in which he had exhibited "no appearance of physical stress or discomfort."726 So.2d at 602.
We must conclude, on this record, that the employee failed to meet his burden of proof that the employer was placed on notice of a connection between the employee's work and his second stroke. The employee admitted that he gave no written notice, and when directly questioned at trial regarding notice, he could offer only the conjecture that he "must have notified somebody" because a trial was taking place. While the service of a complaint approximately two years after the employee's second stroke might constitute a form of written "notice," it falls well short of affording the seasonable notice required under the Act so as to permit the employer to "`make a prompt examination, provide proper treatment, and protect itself against simulated or exaggerated claims.'" Ex parte Brown Root, 726 So.2d at 602. Moreover, under the authorities we have set forth herein, the bare occurrence of the second stroke on the premises of the employer during the employee's final full day as president cannot be said to amount to "actual" notice of a connection between the stroke and the employment, especially where (1) the employee had suffered a stroke three years previously that had no apparent work-related connection, and (2) the employee himself specifically disclaimed such a work connection in filing a claim for sickness-and-accident benefits to be paid from PEMCO's plan.[3] We thus conclude that the trial court's determination that the employer had "actual" notice under the Act is not supported by substantial evidence.
Based upon the foregoing facts and authorities, we reverse the trial court's judgment. As we have stated, our conclusion renders unnecessary any consideration of the merits of the employer's two other issues. We remand the cause for the entry *Page 361 
of a judgment dismissing the employee's action. See Ex parteBrown Root, 726 So.2d at 603.
REVERSED AND REMANDED.
CRAWLEY, P.J., and THOMPSON, MURDOCK, and BRYAN, JJ., concur.
[1] Although other formulations of the employer's name appear in the record, counsel for the employer agreed at trial that "United Auto Workers Local 1155," the name stated in the complaint, was the employer's correct name.
[2] That secretary, although apparently "the right one to tell" of a compensable injury, testified that he was not told that the employee was claiming a connection between his work for the employer and his second stroke.
[3] Because of the absence of actual notice in this case, we need not determine whether the employee's conduct constitutes "deliberate concealment" that might disqualify him from receiving workers' compensation benefits under the main opinion inMid-South Electric Co. v. Jones, 848 So.2d 998 (Ala.Civ.App. 2002).