PITTMAN, Judge.
 

 Honda Manufacturing of Alabama, LLC (“the employer”), appeals from a judgment entered by the Etowah Circuit Court on a workers’ compensation claim brought against the employer by Ronald W. Alford (“the employee”). We affirm in part, reverse in part, and remand.
 

 In January 2005, the employee brought an action against the employer seeking an award of benefits under the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975 (“the Act”), based upon an alleged permanent and total disability stemming from an occupational injury to his left knee. The employer filed an answer to the complaint in which, among other things, the employer denied the employee’s allegations regarding the existence of a permanent and total disability and averred that the employee had failed to give the employer proper notice of his injury. After an ore tenus proceeding, the trial court entered a judgment containing the following pertinent findings of fact and conclusions of law:
 

 “[Although there was some dispute as to when the [employee] suffered his injury, the Court finds that an on-the-job injury[ ] occurred in April of 2008 while [the employee] was employed by the [employer] as a process associate and the parties were subject to and operating under the ... Act ....
 

 “... [I]n April of 2008, the [employee] sustained an injury to his left knee which resulted in a tear to the lateral meniscus in the knee. Said injury, the Court finds, arose out of and in the ... course of [the employee’s] employment with the [employer],
 

 “... The Court finds that the [employer] was notified of the [employee’s] on-the-job injury on or about June 6, 2003, which the Court finds was timely notice to the [employer],
 

 “... The Court further finds that the [employer] suffered no prejudice by the [employee’s] delay in repoi'ting his injury to the [employer],
 

 “... Subsequent to the [employee’s] on-the-job injury he underwent treatment and eventually surgery was performed on [his] injured knee. Although at the time of the [employee’s] injury, he apparently had some arthritis in the knee, the record is clear that the [employee] was asymptomatic of pain in his knee prior to his on the job injury and was fully capable of performing all of the necessary duties and obligations and functions required of his job as a process associate with the [employer], Subse
 
 *24
 
 quent to the surgery being performed on the [employee], and after [he had] reached maximum medical improvement, certain permanent work restrictions were placed on the [employee] by his treating physician, Dr. George J. Douth-it, Jr., which included but were not necessarily limited to the following: no squatting, no kneeling, no crawling, no prolonged standing, no standing over one hour without a 15 minute [period of sitting], A Functional Capacities Evaluation performed on the [employee] was what the doctor used in part as a guide for placing the permanent work restrictions on the [employee]. Dr. Douthit determined that the [employee] had suffered a 3% impairment to his body as a whole as a result of his knee injury. Based on these permanent restrictions placed on the [employee], the [employer] determined that the [employee] could no longer perform the essential job duties and functions of a process associate. Moreover, Dr. Douthit testified in his deposition that in addition to permanent restrictions he placed on the [employee] ... it would be very difficult and problematical for the [employee] to engage in additional job related functions such as climbing stairs, repetitive squatting or walking, or climbing a ladder[;] therefore^] the [employee] has, in the Court’s opinion, additional permanent restrictions on his ability to perform certain job functions. The Court notes that the [employee] has continued to have problems with his knee which has required ongoing treatment by Dr. Douthit.
 

 “... The Court finds[ ] that in addition to the injury to the [employee’s] knee, the [employee] suffered a subsequent injury to his lower back[ ] (i.e., a ruptured lumbar disc). The Court is convinced that the back problems suffered by the [employee] are a direct result of [his] on-the-job injury to his knee. The [employee’s] favoring his injured knee caused additional strain on [his] back. The [employee] had no back problems prior to his knee injury. This opinion by the Court is supported by the [employee’s] testimony[;] the records of Dr. James G. White, the neurosurgeon who treated the [employee] for his back problems[;] and the testimony of Dr. Douthit. The Court believes that the [employee’s] back condition further inhibits [his] ability to perform certain job functions and places additional physical restrictions and limitations on his activities. The [employee] continues to have periodic back problems.
 

 “... The Court heard testimony from vocational rehabilitation consultants for the [parties] who both evaluated the [employee]. The Court finds that the testimony of Jo Spradling, who testified on behalf of the [employee], to be more compelling than the testimony of Ms. Marcia Schulman, who testified for the [employer]. Ms. Spradling testified that based on the permanent physical restrictions placed on the [employee] by Dr. Douthit, as well as other limitations, the [employee] would be 100% vocationally disabled. Ms. Spradling testified that the [employee] would not be able to return to his trade or find gainful employment. It appears to the Court that Ms. Spradling’s opinion is based on a more complete evaluation of the [employee’s] educational background, prior work experience, age and particularly [his] post-injury limitations.
 

 “... The Court finds that the [employee] has sustained his burden of proof so as to entitle him to recover under the ... Act ... and the Court further finds that based upon the proof in this case, the [employee] has suffered a permanent and total loss of capacity to earn a livelihood as a proximate result of
 
 *25
 
 his on-the-job injury with the [employer] and he is entitled to receive future compensation from the [employer],
 

 “... Based upon the Court’s findings of fact, the Court finds that the [employee] is entitled to recover from the [employer] ... workers’ compensation benefits under the laws of the State of Alabama.”
 

 In its appeal, the employer asserts four discrete issues. Those issues, however, may be restated more simply as (a) whether the employee’s claim was barred based upon his failure to give timely notice of his injury or to properly plead when the injury occurred, and (b) whether the trial court erred in determining that the effects of the employee’s knee injury extended to his back so as to warrant the trial court’s consideration of vocational-disability testimony and an award of benefits outside the schedule of injuries in the Act.
 

 Under the Act, our review of the standard of proof and our consideration of other legal issues in a workers’ compensation case are without a presumption of correctness. Ala.Code 1975, § 25-5-81(e)(1). In contrast, when we review a trial court’s findings of fact, we will not reverse a judgment based upon those findings if those findings are supported by “substantial evidence,”
 
 see
 
 § 25-5-81(e)(2), a term interpreted “to mean ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
 
 Ex parte Trinity Indus., Inc.,
 
 680 So.2d 262, 268 (Ala.1996) (quoting
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989)).
 

 The record reveals that the employee, who was 62 years old and employed as a process associate for the employer at the pertinent time, suffered a fall when his foot slipped on the cover of a conveyor belt during the employee’s normal working hours, causing the employee to “turn” his left knee. Although that fall occurred in late April 2003, the employee admitted at trial that he did not immediately report that injury to his supervisor because, he said, he did not believe that he had suffered a significant injury at that time and believed that the stiffness and swelling in his knee that arose a few days after the fall was “going to go away.” The employee first reported his injury to the employer on June 6, 2003, which is the date of injury listed in the employee’s “first report of injury” form and is the date of injury specified in the employee’s complaint.
 

 In
 
 United Auto Workers Local 1155 v. Fortenberry,
 
 926 So.2d 356 (Ala.Civ.App.2005), we briefly summarized the pertinent provisions of the Act governing notice:
 

 “The pertinent notice provisions in the Act are contained in § 25-5-78, Ala. Code 1975. That section provides that ‘an injured employee or the employee’s representative, within five days after the occurrence of an accident, shall give or cause to be given to the employer written notice of the accident.’ Failure to give notice, in the absence of ‘physical or mental incapacity, other than minority, fraud or deceit, or equal good reason,’ will defeat a claimant’s entitlement to medical benefits and compensation accrued before notice is ultimately provided.
 
 Id.
 
 However, § 25-5-78 also provides that
 
 ‘no
 
 compensation shall be payable unless written notice is given within 90 days after the occurrence of the accident or, if death results, within 90 days after the death’ (emphasis added [in
 
 Fortenberry
 
 ]). Thus, while a failure to notify an employer of an accident within 5 days of its occurrence may be
 
 *26
 
 excusable under certain circumstances, and will work only a partial forfeiture of benefits, a failure to effect notice within 90 days is an absolute bar to recovery under the Act.
 
 See generally Ex parte Murray,
 
 490 So.2d 1230, 1232-33 (Ala.1984). ‘The employee has the burden of proving that the employer had notice or knowledge of the injury.’
 
 Wal-Mart Stores, Inc. v. Elliott,
 
 650 So.2d 906, 908 (Ala.Civ.App.1994).”
 

 Fortenberry,
 
 926 So.2d at 359. Although § 25-5-78 refers to notice of an “accident,” Alabama caselaw indicates that the pertinent inquiry is whether the employer has received actual notice of the pertinent
 
 injury. See, e.g., Steele v. General Motors Corp.,
 
 705 So.2d 402, 404-06 (Ala.Civ.App.1997) (reversing trial court’s judgment denying benefits; holding that worker’s back injury did not manifest itself until he had enrolled in an alcohol-treatment program more than five days after accident and that oral notice of injury was given).
 

 In this case, the employee unquestionably provided notice of his injury within 90 days of the injury; thus, under § 25-5-78, no “absolute bar to recovery” ever arose.
 
 Fortenberry,
 
 926 So.2d at 359. Moreover, the trial court, in electing not to penalize the employee, could well have credited the employee’s testimony that his injury did not initially seem significant enough to report; in
 
 Cook Transports, Inc. v. Beavers,
 
 528 So.2d 875, 876-77 (Ala.Civ.App.1988), we affirmed a judgment awarding benefits under the Act accruing from the actual date of an employee’s back injury, rather than the date the injury was reported, based upon testimony that the employee in that case believed that he had suffered only a muscle pull that could be alleviated with bed rest. Finally, that the employee in his complaint specified June 6, 2003, rather than a date in April 2003, as the date of his injury similarly does not warrant reversal under our Rules of Civil Procedure: as a noted treatise on the analogous federal rules observes, “[a]ny variance between the time ... alleged in the complaint and the proof at trial will be governed by the provision in Rule 15(b) for amendments to conform to the evidence.” 5A Charles A. Wright <& Arthur R. Miller,
 
 Federal Practice & Procedure
 
 § 1308 (3d ed.2004);
 
 see also id.
 
 at § 1497 (under Rule 15(c), amendments to a pleading that merely modify facts alleged in an earlier pleading will relate back to the date of the original pleading) and
 
 Newton Lumber Co. v. Owens,
 
 682 So.2d 472 (Ala.Civ.App.1995) (affirming judgment based upon amendment to conform to evidence concerning actual injury date),
 
 writ quashed,
 
 682 So.2d 475 (Ala. 1996).
 
 [1]
 
 We thus reject the employer’s contentions to the effect that the trial court erred in awarding
 
 any
 
 benefits under the Act to the employee.
 

 However, we reach a different conclusion as to the employer’s contentions regarding whether the trial court improperly considered vocational-disability evidence and improperly awarded benefits outside the injury schedule in the Act, under which a claimant sustaining an injury resulting in a loss of use of a leg (such as the employee’s knee injury in this case) is ordinarily to be compensated for a specified number of weeks based upon a fraction of the injured claimant’s weekly wages.
 
 See
 
 Ala.Code 1975, §§ 25-5-57(a)(3)a.l6. and 25-5-57(a)(3)d. In
 
 Boise Cascade Corp. v. Jackson,
 
 997 So.2d 1026 (Ala.Civ.App.2007), we recently noted that under current Alabama Supreme Court precedent, an employee who sustains an
 
 *27
 
 injury to a scheduled member is to be awarded compensation based upon the schedule unless “ ‘ “the effects of the loss of the member extend to other parts of the body and interfere with their efficiency,”’” i.e., “the injury to the scheduled member [must] be ‘ “accompanied by other physical disability (of the body).” ’ ” 997 So.2d at 1034-85 (quoting
 
 Ex parte Drummond, Co.,
 
 837 So.2d 831, 834, 835 (Ala.2002), quoting in turn 4 Lex K. Larson,
 
 Larson’s Workers’ Compensation Law
 
 § 87.02 (2001) and
 
 Leach, Mfg. Co. v. Puckett,
 
 284 Ala. 209, 214, 224 So.2d 242, 247 (1969)).
 
 [2]
 
 After reviewing a number of authorities from other states that adhere to the “effects” test specified in
 
 Ex parte Drwmmond,
 
 this court in
 
 Boise Cascade
 
 reversed that portion of a workers’ compensation judgment determining that the claimant had suffered a back injury; we held that an employee “may not recover nonscheduled disability benefits ... on the basis of complaints of back pain in the absence of a showing that the injury to [the scheduled member]
 
 has caused a permanent physical injury
 
 to [the employee’s] back.” 997 So.2d at 1036 (emphasis added).
 

 The trial court in this case, in concluding that the effects of the employee’s knee injury extended to the employee’s back, based its conclusion upon the testimony of the employee; the deposition testimony of the employee’s treating physician, Dr. George Douthit; and the medical records of the neurosurgeon who treated the employee for his subsequent back problem, Dr. James White. Dr. White’s records indicate that the employee was referred to him in February 2005, almost two years after the employee’s knee injury, by Dr. Jason Junkins, a physician who had treated the employee for renal stones several years previously. The employee also underwent a magnetic-resonance-imaging (“MRI”) procedure, the report of which identified “discogenie degenerative changes,” bulging, narrowing, and herniation in the lumbar region of the employee’s spinal column. After that MRI procedure had taken place, Dr. White reported that although the employee had been “hurting real bad in his back and into his groin,” the employee’s condition had “gotten a lot better,” leaving the employee ( with “some chronic back pain but not nearly enough to want to have any intervention or any further testing”; according to Dr. White, as long as the employee’s condition did not worsen, he would need “no further intervention,” and no further testing was recommended. Notably, there is no indication in Dr. White’s records that the employee’s back-pain symptoms stemmed from his knee injury.
 

 Dr. Douthit testified at his May 2005 deposition that the employee had not complained to him of any back pain or of pain radiating to his lower extremities. Although Dr. Douthit testified that it was
 
 possible
 
 that a person sustaining a knee injury could favor that person’s other, uninjured knee and thereby put additional strain on the person’s back, he expressed surprise that the employee in this case had been seen by another physician for a spinal-disk condition. Dr. Douthit further opined that he had not expected the employee to suffer disk problems as a result of his injury.
 

 The employee testified at trial that he had suffered a sudden onset of back pain for the first time after his knee injury and that he had been referred to Dr. White at that time. When he was asked at trial
 
 *28
 
 during direct examination whether he would attribute his back problems to his knee injury, the employee testified, over the employer’s competency objection, “The way I have to walk and all, yeah, I think so”; he added that the physical therapy he underwent after his knee injury “was affecting my right knee, so I’m sure it affects my back.” However, on cross-examination, the employee admitted that he had not reported any back-pain symptoms to Dr. Douthit, his authorized treating physician, during the preceding three years.
 

 To be sure, under Alabama law, expert medical testimony is not
 
 required
 
 in every case to prove medical causation by substantial evidence.
 
 [3]
 

 See Ex parte Price,
 
 555 So.2d 1060, 1061 (Ala.1989). Yet both the Supreme Court and this court have emphasized that it is “
 
 ‘the overall substance and effect of the whole of the evidence, when viewed in the full context of all the lay and expert evidence,
 
 and not ... the witness’s use of any magical words or phrases,’ ” that is the analytical touchstone in this context.
 
 Ex parte Southern Energy Homes, Inc.,
 
 873 So.2d 1116, 1121 (Ala.2003) (some emphasis added; quoting
 
 Price,
 
 555 So.2d at 1063);
 
 accord Madix, Inc. v. Champion,
 
 927 So.2d 833, 837 (Ala.Civ.App.2005), and
 
 Chadwick Timber Co. v. Philon,
 
 [Ms. 2050697, March 16, 2007] — So.3d -, —— (Ala.Civ.App.2007).
 

 In
 
 Chadwick Timber,
 
 this court considered, among other things, whether a judgment awarding benefits outside the schedule of members in the Act to a claimant who had sustained a work-related leg injury could properly be affirmed based upon the theory that the effects of the claimant’s leg injury had extended to his back. In that case, the claimant, like the employee in this case, had asserted that “changes in his gait caused by his ... injury affected his back, causing him to suffer back pain and contributing to what he claims is his permanent total disability.” — So.3d at -. We rejected the claimant’s argument based upon the dearth of causation evidence other than the claimant’s own testimony; the only other pertinent evidence was the testimony of the claimant’s physician, who stated that “it was possible, but not likely, that the back pain was caused by a change in [the claimant’s] gait.” — So.3d at-. Under those circumstances, we concluded that the claimant had adduced nothing “ ‘ “more than evidence of mere possibilities” ’ ” that his back injury was related to his leg injury and that the employer should not be “guessed” into liability. — So.3d at -. To like effect is
 
 Boise Cascade,
 
 in which the medical evidence reflected only a possibility that the claimant’s back-pain symptoms had arisen because of an antalgic gait, yet no evidence showed that the claimant actually walked with such a gait. 997 So.2d at 1031.
 

 In this case, the employee has testified that he experienced back pain after sustaining his knee injury. However, the employee has sought medical attention for that back pain on only one occasion, in February 2005, at which time the employee was diagnosed with chronic back pain that was insufficient to warrant further medical intervention or testing. No medical evidence connected the medical conditions present in the employee’s spinal column to the knee injury he had sustained while working for the employer. Moreover, as in
 
 Chadwick Timber,
 
 no medical evidence adduced at trial would support
 
 *29
 
 anything other than the mere
 
 possibility
 
 that a lower-extremity injury
 
 could
 
 have caused back pain via a change in the injured person’s gait; indeed, in this case, Dr. Douthit expressed surprise that the employee would have suffered back pain after the knee injury. As a result, we cannot conclude that that portion of the trial court’s judgment awarding benefits beyond those specified in the schedule of members in the Act is supported by substantial evidence.
 

 To the extent that the trial court concluded that the employee is entitled to benefits under the Act despite his delay in giving notice of his injury, its judgment is affirmed. To the extent that the trial court, in its judgment, awarded benefits outside those provided for in the Act for injuries to scheduled members, its judgment is due to be reversed. The cause is remanded for the entry of a judgment, or for further proceedings, consistent with this court’s opinion. Moreover, “[bjecause the employee’s injury falls within the schedule, the trial court erred in receiving evidence relating to the employee’s loss of earning capacity”; therefore, “[o]n remand, the trial court [should] calculate the scheduled disability benefits without consideration of any ... evidence of vocational . disability, including the testimony of ... vocational experts and any evidence relating to the impact of the injury on the employee’s ability to obtain employment and earn wages.”
 
 Boise Cascade,
 
 997 So.2d at 1037-38.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Unlike in
 
 Fort James Operating Co. v. Crump,
 
 947 So.2d 1053 (Aia.Civ.App.2005), we are not here confronted with two separate incidents leading to similar but separate injuries; it is undisputed that the employee in this case suffered only one injury.
 

 [2]
 

 .
 
 Drummond,
 
 expressly abrogated caselaw standing for the proposition, relied upon by the employee in this case, that “an abnormal and unusual incapacity with respect to the member” will permit an employee suffering an injury to a scheduled member to be compensated outside the schedule. 837 So.2d at 835 n. 10.
 

 [3]
 

 . In the absence of any pertinent argument from the parties to the contrary, we assume, without deciding, that the employee’s allegation that his back pain resulted from an accidental traumatic injury to his knee rendered inapplicable the "clear and convincing evidence” standard of proof under the Act governing claims stemming from injuries resulting from gradual deterioration or cumulative-physical-stress disorders
 
 {see generally
 
 § 25-5-81(c), Ala.Code 1975).