THOMAS, Judge.
 

 In 2004, Charles Andrews sued Francis Powell Enterprises, Inc. (“Powell”), seeking workers’ compensation benefits for an injury to his back that, he claimed, arose out of and in the course of his employment on November 3, 2003. Powell answered and denied liability. The case was tried on November 9, 2006. On February 6, 2007, the trial court entered a judgment determining that Andrews was permanently and totally disabled and awarding benefits accordingly.
 

 Powell appealed, and this court reversed the judgment, holding that the judgment failed to comply with § 25-5-88, Ala. Code 1975.
 
 See Francis Powell Enters., Inc. v. Andrews,
 
 990 So.2d 914 (Ala.Civ.App.2008). This court remanded the cause to the trial court with instructions to make findings of fact and conclusions of law with respect to Powell’s affirmative defenses— that Andrews had failed to give notice of his injury as required by § 25-5-78, Ala. Code 1975, and that Andrews had failed to disclose a preexisting physical condition in violation of § 25-5-51, Ala. Code 1975.
 

 On remand, the trial court entered a judgment on May 9, 2008, with amended findings of fact and conclusions of law, determining that Andrews had given timely notice of his injury and that Andrews had not misrepresented the fact of his preexisting condition when he was hired in 2003. On June 19, 2008, Powell timely appealed from the amended judgment,
 
 *729
 
 raising six issues: (1) that the trial court’s amended judgment fails to comply with § 25-5-88, Ala.Code 1975; (2) that the trial court’s finding of proper notice is not supported by substantial evidence; (3) that the trial court’s finding of medical causation is not supported by substantial evidence; (4) that Andrews’s receipt of Social Security disability benefits estops him from denying that he was disabled before November 3, 2003; (5) that the trial court failed to apply the apportionment provisions of § 25-5-58, Ala.Code 1975; and (6) that, in determining Powell’s liability, the trial court erred in considering Powell’s voluntary payment of compensation benefits to Andrews, in violation of § 25-5-56, Ala.Code 1975. Powell raises no issue with respect to the trial court’s amended finding that Andrews did not fail to disclose a preexisting physical condition in violation of § 25-5-51, nor does it challenge the trial court’s finding that Andrews is permanently and totally disabled.
 

 Factual Background
 

 Andrews is a 40-year-old high-school dropout who had, from 1993 to 2003, worked primarily either as a diesel mechanic or as a long-haul truck driver. On September 22, 1993, Andrews suffered a work-related injury during his employment at ABC Enterprises, Inc., a fast-food restaurant company, when he fell from a ladder and ruptured a cervical disk. During his treatment for the cervical injury, he was also diagnosed as having some problems with his lower back. In December 1994, Andrews had surgery to repair the cervical injury that he suffered in the 1993 work-related accident. In 1995, Andrews applied for disability benefits from the Social Security Administration; his application was approved and he began receiving benefits in 1996. From 1995 through 1998, he continued to work part-time as a self-employed truck driver.
 

 From 1993 to 1999, Andrews complained to several health-care providers of lower-back pain, as well as radiating pain, numbness, and weakness in his left leg. A lumbar MRI test performed in early November 1993 indicated disk space narrowing and degenerative changes at L5-S1. Another lumbar MRI test done in late November 1993 showed hypertrophic changes and a bulging disk at L5-S1. A February 1994 MRI test demonstrated that Andrews had grade I spondylolisthe-sis
 
 [1]
 
 at L5-S1 and a narrowing of the nerve-root canals. In March 1995, a lumbar MRI test confirmed that Andrews had spondylolisthesis, as well as spondylosis, or a bone spur, at L5-S1, and a bulging disk at L4-5. An MRI test done in April 1999 demonstrated that Andrews had spondylo-listhesis at L5-S1 and disk herniation with nerve-root impingement on the left side at L5-S1. A CT myelogram performed in July 1999 showed spondylolisthesis, a bulging disk at L5-S1 that was impinging on the S2 nerve root on the left side, and a ruptured disk at L5-S1 that was pinching the left SI nerve. A nerve-conduction-velocity (“NCV”) test performed on July 22, 1999, showed that Andrews’s L5, SI, and S2 nerves were not functioning properly.
 
 [2]
 

 In April 1999, Andrews consulted Dr. Robert White and Dr. Brent Faircloth, neurosurgeons located in Mobile, about his back and leg pain. Dr. White sent An
 
 *730
 
 drews to Dr. Patricia Boltz, a pain-management specialist, for an epidural steroid block, which, Andrews said, provided him complete but only temporary pain relief. On August 31, 1999, Andrews reported to Dr. Faircloth that he was experiencing severe left-leg pain with numbness in his big toe and an inability to stand or walk for more than five minutes. After reviewing Andrews’s CT scans and concluding that he was suffering from a grade I spon-dylolisthesis at L5-S1, Dr. Faircloth recommended that Andrews undergo surgery to stabilize his lumbar spine. The surgery was scheduled for December 1999, but it was canceled when, Andrews said, his back pain resolved following another epidural steroid block in September 1999.
 

 Andrews experienced no recurrence of his back and leg pain and returned to full-time work without restrictions in late 1999. From late 1999 to late 2003, Andrews was employed at Gene Pritchett Timber Company in Andalusia as log truck driver, at Georgia Pacific Corporation as a diesel truck mechanic, and at Billy Barnes Enterprises as a truck maintenance man; in the summer of 2003, he went to work for Powell as a long-haul truck driver.
 

 Andrews testified that in the course of his employment with Powell on November 3, 2003, he picked up a load of plastic pipes at Crestview Pipe Company in Henderson, Kentucky. In tightening the straps that secured the load, Andrews pulled down on a binding bar and a strap snapped. He testified that he fell backwards, landed on his lower back, and experienced a sharp pain. Andrews said that, at the time, he did not think he had sustained a “major injury”; he thought “it was just probably a hard fall.” Accordingly, he went to Georgia, dropped off his load of pipes, and came back to Alabama where he picked up another load. Andrews said that, two or three days after falling in Kentucky, he bent over to pick up a tarpaulin to cover his load in Lafayette, Alabama, when he felt a “pop” in his lower back, “couldn’t straighten up,” and “felt that pain again.”
 

 Andrews consulted his family physician, Dr. Charles Eddins, who referred him to Dr. White in Mobile. Dr. White and Dr. Faircloth agreed that Andrews needed surgery, and on December 15, 2003, Dr. Faircloth performed the same surgery on Andrews that he had recommended for Andrews four years earlier — a posterior lumbar interbody fusion with pedicle rod stabilization at L5-S1. During the course of the surgery, Dr. Faircloth noted that Andrews’s spondylolisthesis had deteriorated from grade I to grade II. The surgical procedure succeeded in stabilizing Andrews’s lumbar spine. After the surgery, however, Andrews developed foot drop, bladder and bowel incontinence, and loss of sexual function.
 

 The foot-drop condition causes Andrews to trip, and he has fractured his foot twice since the surgery. Andrews also continues to have chronic back pain. He has been treated with narcotic pain relievers and has had two surgically implanted pain pumps, one dispensing morphine and one dispensing Dilaudid. He has been seen by a urologist regarding his bladder and sexual-dysfunction problems.
 

 Dr. Patrick Couch, an anesthesiologist and pain-medication specialist, characterized Andrews’s postoperative condition as “failed back surgery syndrome,” which, he explained, occurs when the patient has been anatomically improved from a stabilization standpoint but continues to have intractable pain. Dr. Couch testified that Andrews’s foot drop, bladder and bowel incontinence, and sexual-dysfunction problems appear to be consistent with the peri-neal nerve damage that was indicated in an NCV study done by his partner, Dr. Xiulu Rúan, a neurologist and physiatrist,
 
 *731
 
 in January 2006. Dr. Couch concluded that Andrews had reached maximum medical improvement on April 24, 2006, that he was not malingering, that he was incapable of working, and that he was unemployable.
 

 At trial, Powell presented the testimony of Lindsay Patterson, a vocational consultant, who stated that she had identified 11 jobs in a 60-mile radius of Andrews’s residence that fell within the sedentary-work restrictions given to Andrews in 2004 by Dr. Edward M. Schnitzer, a specialist in physical medicine and rehabilitation located in Mobile. Patterson’s testimony was undercut, however, by her admissions that she had never met Andrews; that she had not talked with Dr. Couch; and that Dr. Schnitzer, who had not seen Andrews for two years, had no opinion about what restrictions would currently apply to him.
 

 Standard of Review
 

 “In reviewing the standard of proof ... and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.” § 25-5-81(e)(1), Ala.Code 1975. “In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” § 25-5-81(e)(2), Ala.Code 1975. “[Sjubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989). Therefore, this court “will not reverse the trial court’s finding of fact if that finding is supported by substantial evidence.”
 
 Ex parte Trinity Indus., Inc.,
 
 680 So.2d 262, 268-69 (Ala. 1996).
 

 Compliance with § 25-5-88 and Notice of Injury
 

 Powell contends that the trial court’s judgment fails to comply with § 25-5-88, Ala.Code 1975, because, it says, the accident in which Andrews hurt his back occurred on November
 
 5,
 
 2003, and the trial court made findings only with respect an accident that occurred on November
 
 3,
 
 2003. Therefore, Powell asserts, the trial court made no findings with respect to whether Andrews had given notice of his November 5, 2003, accident and injury.
 

 The trial court’s findings on the issue of notice state:
 

 “On November 3, 2003, while employed with Francis Powell, Mr. Andrews was injured securing a load pulling on a strap when he fell on his lower back. Prompt actual notice of the injury was provided to [Powell] as noted in the Employer’s First Report of Injury executed by Terry Carpenter on or about 11/7/03. In the Employer’s First Report of Injury, Terry Carpenter indicated that Andrews was injured on or about 11/03/03 and that the date [Powell] was first notified of the incident was on 11/06/03.”
 

 We conclude that, with regard to the issue of notice, the trial court’s judgment both complies with § 25-5-88 and is supported by substantial evidence.
 

 Andrews testified that, after feeling “[the] pain
 
 again”
 
 that he had felt after his fall in Kentucky, he notified Terry Carpenter, a secretary at Powell, who instructed him to see his family doctor. The record includes an “Employer’s First Report of Injury,” executed by Carpenter, which states that Andrews notified her, on November 6, 2003, that he had been injured on November 3, 2003.
 

 Powell maintains that Andrews’s own testimony indicates that he did not believe he had sustained a major injury on No
 
 *732
 
 vember 3, that any injury that did occur happened on November 5, and that the trial court made no findings concerning notice of the November 5 injury. We conclude that the trial court’s finding that the date of injury was November 3 is supported by substantial evidence. The trial court was authorized to find that, after his fall in Kentucky, Andrews was unaware of the seriousness of his injury because its full effects had not yet manifested themselves.
 
 See Cook Transps., Inc. v. Beavers,
 
 528 So.2d 875 (Ala.Civ.App.1988), a case with substantially similar facts.
 

 In
 
 Beavers,
 
 a truck driver hurt his back on June 7 while picking up a load of steel coils in California. Thinking that he had merely “pulled a muscle,” the trucker drove to Illinois, delivered the load, and picked up another load. Upon his return to Alabama on June 17, the trucker, hoping that bed rest would improve his condition, informed his dispatcher that he was going to take a few days off. When his condition failed to improve, he informed the employer’s safety director of his accident on June 26. Stating that the trucker’s failure to have notified the employer of the injury on June 7 stemmed from the fact that the seriousness of the injury had not yet manifested itself on June 7, this court affirmed an award of benefits accruing from June 7 rather than from June 26.
 
 Beavers,
 
 528 So.2d at 876-77.
 
 But see Mead Paper Co. v. Brizendine,
 
 575 So.2d 571, 572 (Ala.Civ.App.1990) (recognizing abrogation of
 
 Beavers,
 
 on other grounds, by
 
 Ex parte Patterson,
 
 561 So.2d 236 (Ala. 1990)).
 
 See also Honda Mfg. of Alabama, LLCv. Alford,
 
 6 So.3d 22, 25 (Ala.Civ.App. 2007) (employee fell and “turned his knee” in late April but did not immediately report the injury because he thought the stiffness and swelling were “going to go away”); and
 
 Steele v. General Motors Coyp.,
 
 705 So.2d 402, 404-06 (Ala.Civ.App. 1997) (reversing a judgment denying benefits and holding that worker gave oral notice of back injury, which did not manifest itself until more than five days after accident).
 

 Medical Causation
 

 Powell maintains that the trial court’s findings regarding medical causation are not supported by substantial evidence. It asserts that the condition for which Andrews received treatment and underwent surgery in 2003 (spondylolisthesis-grade II, at L5-S1) represented a progressive deterioration of the condition for which he had previously been treated in 1999 (spon-dylolisthesis-grade I, at L5-S1) and in 1993 (degenerative changes at L5-S1, including disk-space narrowing and a bulging disk). Accordingly, Powell says, the evidence established that the medical problems Andrews was having in 2003 were caused by a degenerative condition in his lumbar spine and not by his November 3, 2003, work-related accident.
 

 Whether the employment caused an injury is a question of fact to be resolved by the trial court.
 
 See Ex parte Valdez,
 
 636 So.2d 401, 404 (Ala.1994); and
 
 Statewide Painting Co. v. Sharron,
 
 693 So.2d 518 (Ala.Civ.App.1997). The trial court made the following findings of fact with respect to medical causation:
 

 “Drs. Faircloth, Couch and Schnitzer each have testified that Mr. Andrews’s condition was caused or exacerbated by his fall on November 3, 2003. Specifically Dr. Faircloth testified as follows:
 

 “ ‘Q. Okay. Now the first of 1999, he denied any sphincteric difficulty. Am I — sphincteric difficulty?
 

 “ ‘A. That’s correct.
 

 “ ‘Q. He didn’t have any drop foot. He had a grade one spondylolisthesis and left leg pain. And I’m going to give you an assumption. Assume that
 
 *733
 
 that was the original — those were the original findings in 1999. Surgery is scheduled. But he decides for whatever reason not to go to surgery, believes he’s had a miraculous healing of sorts, goes back to work, works at Georgia-Pacific uninterrupted, then gets a job paying more money driving a truck, a Mack truck, a big eighteen-wheeler truck. And on November 3rd of ’03 is pulling a strap on that truck and falls off the bed of the truck onto the ground onto his buttocks. And then after that, he has a spondylolis-thesis grade two, he has bilateral pain, he has — and has developed since the fall a foot drop, incontinence mixed, bladder and bowel, impotence, and chronic pain. He’s been treated — and you know, Doctor, he’s been treated with pain medication and pain therapy and every other thing you can imagine. He’s been to [the University of Alabama at Birmingham hospital] and he’s had neurologic testing done. Assume for me those facts, Doctor. Would you agree with me that this fall exacerbated what was possibly going on in 1999?
 

 “ A. I would.’ (Def. Ex. 40, pp. 51, 52)
 

 “Dr. Schnitzer also related Mr. Andrews’s problems to his fall in 2003. Specifically, Dr. Schnitzer testified as follows in response to the Employer’s question:
 

 “ ‘Q. Okay. But do you have an opinion as to whether or not what you were treating him for is — he told you about an accident that you described for us when he was pulling on that strap and it broke and he said he fell backwards.
 

 “A. Yes.
 

 “ ‘Q. Do you have an opinion about whether or not what you were treating him for is caused or contributed to by that accident where the strap broke?
 

 “A. Yes.
 

 “ ‘Q. Okay. What is that opinion?
 

 “ A. Yes, that I do think it’s related.’ (Def. Ex. 39, p. 72).”
 

 The trial court’s findings with respect to the testimony of Dr. Couch and Dr. Schnitzer are not supported by substantial evidence. Dr. Couch did not render an opinion on the medical causation of Andrews’s current condition. Although Dr. Schnitzer, on direct examination, rendered the opinion recited in the trial court’s findings, Dr. Schnitzer, on cross-examination, acknowledged that Andrews had a significant history of previous back and leg problems about which Andrews had not informed him. The following then occurred:
 

 “Q. [By Mr. Pipkin, Powell’s attorney:] ... [T]he presence or absence of problems between 1999 and the time [Andrews] reported] having fallen [in 2003] is something you don’t know about, correct?
 

 “A. [By Dr. Schnitzer:] No, I really don’t.
 

 “Q. All you have to base [your opinion as to causation] on is what [Andrews had] told you, if anything
 

 “A. Correct.
 

 “Q. Okay. So any opinions that you might render about whether or not what we’re dealing with today is related to a condition that’s progressed over time or whether it came from a specific event are based upon accurate history?
 

 “A. At this point, I — it’s just kind of a muddy; it would be a muddy answer. I can’t give you an accurate answer, I don’t believe, no.”
 

 
 *734
 
 Dr. Faircloth reviewed Andrews’s “long history of back and left leg pain” between 1993 and 1999 and stated that Andrews had a “progression of [the] slippage” at L5-S1 over a six-year period. Dr. Fair-cloth testified that he would have expected the progression to continue, and he said that it did “not make sense” to him that Andrews’s condition “just all of a sudden [got] better” in late 1999 when Andrews canceled the surgery that Dr. Faircloth had recommended. Dr. Faircloth said that when he saw Andrews again in 2008 after the work-related accident, Andrews’s complaints and symptoms were similar to the ones he had had in 1999. When he was asked whether it was possible that Andrews’s back pain simply disappeared between 1999 and 2003, Dr. Faircloth answered, “I have seen patients get better for a period of time and go back to full activity [but] it’s pretty uncommon.” When questioned about whether it was unusual for spondylolisthesis to progress from grade I to grade II in three or four years, Dr. Faircloth responded: “I don’t think it would be unusual at all. You know, I think we saw the same thing from 1993 to 1999. It just got worse and worse.” The following then occurred on direct examination:
 

 “Q. [By Mr. Pipkin:] Okay. And would that kind of progression occur with or without intervening traumatic events?
 

 “A. [By Dr. Faircloth:] It could occur without events or it could occur with events. I mean, either way.”
 

 On cross-examination, Mr. Duhé, Andrews’s attorney, posed to Dr. Faircloth the lengthy hypothetical question quoted in the trial court’s findings, which ended with the inquiry, “Would you agree with me that this fall [in 2003] exacerbated what was possibly going on in 1999?” Dr. Faircloth answered, “I would.” On redirect examination, the following occurred:
 

 “Q. [By Mr. Pipkin:] You do know that when you went in to do surgery that what you found there you diagnosed as a grade two spondylo-listhesis, correct?
 

 “A. That’s correct.
 

 “Q. As to whether that grade two spondylolisthesis occurred before, during, or after this November [3], 2003 incident that Mr. Andrews has told us about, are you able to tell us one way or the other, given the fact that you didn’t see him for three or four years?
 

 “A. I am not able to differentiate if absolutely the fall caused that or not.
 

 “Q. It’s quite possible that the grade two spondylolisthesis existed due to progression prior to this incident that he told you about?
 

 “A. That’s correct.”
 

 On recross-examination, the following occurred:
 

 “Q. [By Mr. Duhé:] Doctor, assume his history is accurate, assume that the history that you have there is accurate. He’s had no pain or livable pain, and then after he pulls this strap and lands on his buttocks several feet to the ground off of a flatbed truck, and based on the history which he told you, T hurt it falling off of this truck,’ would you say that that fall exacerbated this spondylolisthesis?
 

 “A. I would.”
 

 Based on the foregoing exchanges, one might consider that Dr. Faircloth’s testimony was inconclusive or indecisive, that he vacillated between the opinion that Andrews’s fall was, and was not, a contributing cause of the injuries for which An
 
 *735
 
 drews was seeking benefits. Discussing proof of medical causation, the Alabama Supreme Court stated, in
 
 Ex parte Bryant,
 
 644 So.2d 951 (Ala.1994):
 

 “ ‘To appraise the true degree of indispensability which should be accorded medical testimony, it is first necessary to dispel the misconception that valid awards can stand only if accompanied by a definite medical diagnosis. True, in many instances it may be impossible to form a judgment on the relation of the employment to the injury, or relation of the injury to the disability, without analyzing in medical terms what the injury or disease is. But this is not invariably so.
 
 In appropriate circumstances, awards may be made when medical evidence on these matters is inconclusive, indecisive, fragmentary, inconsistent, or even
 
 nonexistent.’ ”
 

 Bryant,
 
 644 So.2d at 952 (quoting
 
 Ex parte Price,
 
 555 So.2d 1060, 1061-62 (Ala.1989), quoting in turn 3 A. Larson,
 
 The Law of Workmen’s Compensation
 
 § 79.51(a) at p. 15-426.128 (1988)) (emphasis added).
 
 See also
 
 1 Terry A. Moore,
 
 Alabama Workers’ Compensation
 
 § 7:19 at 218 (1998).
 

 A close reading of Dr. Faircloth’s deposition indicates that his testimony was not inconclusive, indecisive, or inconsistent; that, on the contrary, Dr. Faircloth rendered an opinion that Andrews’s November 3, 2003, accident
 
 was
 
 the medical cause of Andrews’s injuries; but that, being a scientifically trained professional, Dr. Fair-cloth understood that a different opinion would also be tenable because, under the circumstances, it was impossible to discern the truth with absolute certainty. For example, Dr. Faircloth stated that the deterioration in Andrews’s lumbar spine between 1999 and 2003 could have occurred with or without an intervening traumatic event, and he acknowledged that he was unable to “differentiate if
 
 absolutely
 
 [Andrews’s] fall caused” the deterioration. Absolute certainty with respect to medical causation, however, is not required. In
 
 Ex parte Price,
 
 the Alabama Supreme Court held that
 

 “[i]t is in the overall substance and effect of the whole of the evidence, when viewed in the full context of all the lay
 
 and
 
 expert evidence, and not in the witness’s use of any magical words or phrases, that the test [for medical causation] finds its application.”
 

 555 So.2d at 1063 (citing
 
 Odell v. Myers,
 
 52 Ala.App. 558, 295 So.2d 413 (1974)).
 
 See also Ex parte Southern Energy Homes, Inc.,
 
 873 So.2d 1116, 1121-22 (Ala.2003).
 

 Dr. Faircloth was asked twice whether — assuming a set of facts approximating the “overall substance and effect of the whole of the evidence,”
 
 Ex parte Price,
 
 555 So.2d at 1063, when viewed in the context of Andrews’s reported history — he would agree that Andrews’s fall exacerbated his spondylolisthesis, and each time Dr. Fair-cloth answered without equivocation, “I would.”
 

 We have carefully reviewed Dr. Faircloth’s testimony, and we conclude that it constitutes substantial evidence from which the trial court could have found that Andrews’s November 3, 2003, work-related accident was a contributing cause of the injuries for which he was seeking relief under the Workers’ Compensation Act.
 

 “[0]ur task, as an appellate court reviewing a judgment entered in a workers’ compensation case, is to determine ‘only whether the evidence supporting the trial court’s findings of fact constitutes “substantial evidence,”
 
 ie.,
 
 “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” ’
 
 Ex parte Staggs,
 
 825 So.2d
 
 *736
 
 820, 821-22 (Ala.2001) (quoting
 
 Ex parte Trinity Indus., Inc.,
 
 680 So.2d [262] at 268 [ (Ala.1996) ], quoting in turn
 
 West v. Founders Life Assur. Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989)). In contrast, an appellate court ‘is prohibited from reweighing the evidence, i.e., it is not to consider whether in its opinion the “substantial evidence” before the trial court might have caused the appellate court— if it had been the fact-finder- — to find the facts to be different from what the trial court found them to be.’
 
 Ex paHe Staggs,
 
 825 So.2d at 822.”
 

 Muhammad v. Laidlaw Transit, Inc.,
 
 917 So.2d 842, 846 (Ala.Civ.App.2005).
 

 Apportionment of Benefits/Judicial Estoppel
 

 Powell argues that because Andrews had a preexisting back injury with spondylolisthesis, his right to recover workers’ compensation benefits for the November 3, 2003, on-the-job injury is limited by § 25-5-58, Aa.Code 1975. That statute provides:
 

 “If the degree or duration of disability resulting from an accident is increased or prolonged because of a preexisting injury or infirmity, the employer shall be liable only for the disability that would have resulted
 
 from the
 
 accident had the earlier injury or infirmity not existed.”
 

 In a long line of cases beginning with
 
 Ingalls Shipbuilding Corp. v. Cahela,
 
 251 Aa. 163, 36 So.2d 513 (1948) (superseded on other grounds by statute,
 
 see
 
 Tit. 26, § 262(a), Aa.Code 1940), Aabama appellate courts have held that “ ‘the term ... infirmity in [§ 25-5-58] refer[s] to a condition which affects [the plaintiffs] ability to work as a normal man at the time of the accident or which would probably so affect him within the compensable period.’ ”
 
 Ex parte Lewis,
 
 469 So.2d 599, 601 (Aa.1985) (quoting
 
 Cahela,
 
 251 Aa. at 173, 36 So.2d at 521). Pursuant to
 
 Cahela,
 

 “the law presumes that there is no preexisting injury or infirmity when the employee is able to fully perform his or her job duties in a normal manner prior to the subject injury. [Section 25-5-58] only applies when the previous injury or infirmity has demonstrated itself as disabling
 
 and
 
 prevented the employee from earning wages in a normal manner.”
 

 1 Terry A. Moore,
 
 Alabama Workers’ Compensation
 
 § 16.25 at 708-09 (1998) (emphasis added; footnote omitted).
 

 The evidence in the present case indicates that, during the three years preceding his November 3, 2003, accident, Andrews had worked at Gene Pritchett Timber Company in Andalusia as log truck driver, at Georgia Pacific Corporation as a diesel truck mechanic, at Billy Barnes Enterprises as a truck maintenance man, and at Powell as a long-haul truck driver — all without complaints of back pain.
 

 Citing
 
 Consolidated Stores, Inc. v. Gargis,
 
 686 So.2d 268 (Aa.Civ.App.1996), overruled on other grounds by
 
 Bleier v. Wellington Sears Co.,
 
 757 So.2d 1163 (Aa. 2000), Powell argues that the doctrine of judicial estoppel prevents Andrews from denying that he was disabled before his November 3, 2003, accident because, it says, Andrews received Social Security disability benefits from 2000 through 2003, based upon his representation to the Social Security Administration that he was totally disabled.
 

 Powell submitted federal income-tax records that, it says, indicate that Andrews had received Social Security disability benefits in the amount of $10,344 for the 2000 tax year; $10,716 for the 2001 tax year; $13,408 for the 2002 tax year; and $14,488 for the 2003 tax year. We have examined
 
 *737
 
 the records and we note that the above-enumerated sums are unexplained other than by the designations “PENS/ANN” or “GR PEN/IRA.” There was no testimony at trial regarding the meaning of the designations on the tax records Powell submitted.
 

 “It is well settled that an appellant has the burden of presenting a record containing sufficient evidence to show error by the trial court.
 
 Leeth v. Jim Walter Homes, Inc.,
 
 789 So.2d 248, 246 (Ala.Civ.App.2000). It is not the duty of this court to search an appellate record for evidence to support an appellant’s contention of error.
 
 Jenkins v. Landmark Chevrolet, Inc.,
 
 575 So.2d 1157, 1161 (Ala.Civ.App.1991). ‘ “This court cannot assume error, nor can it presume the existence of facts to which the record is silent.” ’
 
 Alfa Mut. Gen. Ins. Co. v. Oglesby,
 
 711 So.2d 938, 942 (Ala.1997) (quoting
 
 Newman v. State,
 
 623 So.2d 1171,1172 (Ala.Civ.App.1993)).”
 

 Dolgencorp, Inc. v. Hudson,
 
 924 So.2d 727, 736 (Ala.Civ.App.2005).
 

 With respect to Andrews’s receipt of Social Security disability benefits, the trial court made the following factual findings:
 

 “Andrews applied for [Social Security disability benefits] in 1994 and was awarded benefits in 1996. The benefits award was provided to [Andrews’s wife] as guardian in [light] of the fact that Andrews was unable to mentally handle financial tasks competently. The [Social Security disability] benefits ended in 2001.”
 

 The trial court’s findings are based upon Andrews’s trial testimony. Because the tax records submitted by Powell are unclear and unexplained, we conclude that the trial court’s finding is supported by substantial evidence.
 

 We hold that Andrews’s receipt of disability benefits from the Social Security Administration until 2001 neither es-tops him from claiming that he was fully performing his job duties until November 3, 2003, nor mandates the application of § 25-5-58. Our opinion in
 
 Gargis,
 
 supra, is not binding precedent with respect to the estoppel issue because a majority of the judges on this court did not concur in the disposition of the judicial-estoppel issue. Moreover, the Alabama Supreme Court has held that the apportionment provision of § 25-5-58 does not apply to one who, despite a prior adjudication of permanent total disability by the Social Security Administration, has returned to work and fully performed his job duties in a normal manner.
 
 See Ex parte Bratton,
 
 678 So.2d 1079,1083 (Ala.1996).
 

 In
 
 Wal-Mart Stores, Inc. v. Bratton,
 
 678 So.2d 1071 (Ala.Civ.App.1995), reversed,
 
 Ex parte Bratton,
 
 supra, Bratton suffered a heart attack in 1976 and retired from his former employment with a disability pension. Two years later, the Social Security Administration determined that he was eligible for Social Security disability benefits. In 1985, Bratton suffered a stroke that weakened one side of his body. In 1988, he went to work as a “greeter” at a Wal-Mart store. In 1992, Bratton was injured when he fell over a hose in the Wal-Mart garden department. The trial court awarded Bratton permanent-total-disability benefits, and Wal-Mart appealed to this court, arguing that the trial court had erred in determining that Bratton was permanently and totally disabled as a consequence of his work-related injury, because, it said, “an employee who has been previously declared totally and permanently disabled, who has been compensated as a result of his disability, and who subsequently returns to work and is injured, cannot recover total and permanent disability benefits for the subsequent injury
 
 *738
 
 under [workers’] compensation statutes.” 678 So.2d at 1074.
 

 With respect to the apportionment-of-benefits issue, this court remanded the cause to the trial court with instructions to make findings “with reference to whether Bratton performed his job duties without any limitations or restrictions or was hired subject to a preexisting disability. The trial court should then determine whether ... [§ ]25-5-58 [is] applicable to Bratton’s disability award, and, if so, it should recalculate the award of benefits accordingly.” 678 So.2d at 1077.
 

 The supreme court granted Bratton’s petition for writ of certiorari and reversed this court’s judgment in
 
 Ex parte Bratton,
 
 supra. The court held that, although Bratton had previously been determined to be permanently and totally disabled by the Social Security Administration, he had no “preexisting injury or infirmity” within the meaning of § 25-5-58 because he had been fully performing his job duties in a normal manner for five years before the accident. 678 So.2d at 1082-83.
 

 In the present case, the trial court’s judgment states:
 

 “With reference to his preexisting condition I find that [Andrews] suffered a preexisting condition which began in approximately 1993 or earlier. [Andrews] was able to return to work in 1999 without limitation, full duty, earning substantial sums up to November 3, 2003 when he fell from a truck while working for [Powell]. [Andrews] is entitled to permanent total disability benefits notwithstanding the preexisting injury given the fact that he was at the time of his injury fully employed, without restriction, at premium pay. At the time of his injury, [Andrews] was not receiving [Social Security] disability benefits.”
 

 The factual components of the trial court’s determination are supported by substantial evidence, and the trial court’s application of the law to the facts is correct. The trial court determined that Andrews’s preexisting back injury “did not disable him from doing the job that he had been employed to do and, therefore, it did not apportion disability benefits in accordance with ... [§ ] 25-5-58.”
 
 Ex parte Bratton,
 
 678 So.2d at 1083.
 

 Voluntary Payment of Benefits
 

 The trial court made the following factual finding in its judgment:
 

 “Since August of 2005, [Powell] has maintained worker’s compensation benefits at $881.88 bi-monthly even though Dr. Couch released Mr. Andrews in April of 2006.”
 

 Citing § 25-5-56, Ala.Code 1975, Powell asserts that the finding “serves no purpose other than to raise the inference that Powell admits liability based on its continued payment of benefits.” Section 25-5-56 provides, in pertinent part:
 

 “All moneys voluntarily paid by the employer or insurance carrier to an injured employee in advance of agreement or award shall be treated as advance payments on account of the compensation.
 
 In order to encourage advance payments, it is expressly provided that the payments shall not be construed as an admission of liability but shall be without prejudice.”
 

 (Emphasis added.)
 

 We do not know why the trial judge included the finding regarding Powell’s voluntary payments of compensation in its judgment, but we will not presume that the finding implies that the court deemed the payments to be an admission of liability by Powell. We presume that trial judges know and follow the law.
 
 Ex parte Atchley,
 
 936 So.2d 513, 516 (Ala. 2006); and
 
 Ex parte Slaton,
 
 680 So.2d 909,
 
 *739
 
 924 (Ala.1996). ‘“A trial judge’s actions are presumptively correct in the absence of a showing to the contrary.’ ”
 
 Ex parte Atchley,
 
 936 So.2d at 516 (quoting
 
 Carter v. State,
 
 627 So.2d 1027, 1028 (Ala.Crim. App.1992)). Because the trial court’s finding does not, on its face, indicate that the court drew any improper inference from Powell’s voluntary payments to Andrews, and because Powell has not made a showing that the trial court did draw such an inference, we cannot presume error.
 

 The judgment of the Clarke Circuit Court is affirmed.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
 

 MOORE, J., recuses himself.
 

 [1]
 

 . Dr. Brent Faircloth, a neurosurgeon, explained that spondylolisthesis is disk slippage. There are four grades of slippage, each corresponding to one quarter of a vertebral body.
 

 [2]
 

 . Dr. Brent Faircloth, a neurosurgeon, explained that the SI nerve controls the foot and the calf; that the S2 nerve controls the perineum; and that the perineum plays a role in bladder, bowel, and sexual function.