Vandal Jones appeals from an adverse decision by the Baldwin Circuit Court on his claim for workers' compensation benefits against his former employer ARD Contracting, Inc. ("ARD"). We reverse and remand.
Jones worked as a carpenter for ARD and alleged in his complaint that he was injured on two separate occasions while working in the line and scope of his employment. First, Jones alleged that on December 13, 1997, he was climbing some rebar when the rebar snapped, causing him to fall to the ground, landing on his back. Jones received medical treatment for the injury and subsequently returned to work.
Jones also alleged that on February 17, 1999, he was using his left arm to pull wall paneling from a concrete form off of a wall. He testified at a hearing that he pulled on the paneling for approximately 20 to 30 minutes until it came loose. He stated that he did not feel any pain as a result of the incident on that day, but that on the next day he started to feel pain in his back and left shoulder. He continued to work the next couple of days, but on the morning of February 20, 1999, a Saturday, he woke up in severe pain — his feet and legs were numb, he was having back spasms, and he was unable to get himself out of bed. Later that day, Jones went over to his mother's house and had her drive him to the job site because he was supposed to work that day and he wanted to inform his supervisor that he would be unable to work.
Upon arriving at the job site, Jones, with his mother beside him, informed construction superintendent Paul Ellis of his injury. Jones informed Ellis that he had injured his back on the job and that that was why he had not come into work that day. Ellis did not fill out a "first report of injury" form because, Ellis testified, he did not think Jones had made "that big [a] deal" out of the injury. Jones was laid off two days later because ARD had been unable to secure another construction job for several of its employees. The first report of injury filed concerning the injury arising from the February 17, 1999, incident was dated July 21, 1999. Jones has not worked for ARD since February 22, 1999.
On July 12, 1999, Jones filed his workers' compensation complaint against ARD for his two alleged injuries. A hearing was held on November 22, 1999, dealing solely with the issue of coverage for the February 17, 1999, injury. The trial court heard testimony from Jones, from his *Page 134 
mother Sally Jones, and from Ellis, and it accepted documentary evidence in the form of depositions and medical records. On February 9, 2000, the trial court entered a judgment in which it concluded: (1) that the February 17, 1999, injury was a separate injury from the one that had allegedly occurred on December 13, 1997; (2) that Jones "clearly did not give timely written notice" of the alleged February 17, 1999, injury; and (3) that Jones had not provided timely oral notice of the injury either, and, therefore, the injury was not compensable. The trial court indicated that it would conduct further proceedings concerning the December 13, 1997, injury.
Subsequently, Jones and ARD entered into an agreement concerning the December 13, 1997, injury. The trial court approved this settlement agreement on July 16, 2003. Jones appeals from the February 9, 2000, judgment concerning the February 17, 1999, injury.
The sole issue on appeal is whether Jones gave ARD the required statutory notice of his injury.
 "Section 25-5-78, Ala. Code 1975, provides, in pertinent part, that `no compensation shall be payable [to an injured employee] unless written notice is given within 90 days after the occurrence of the accident. . . .' `An employee is not entitled to workers' compensation benefits if [he] fails to provide notice.'"
Premdor Corp. v. Jones, 880 So.2d 1148, 1153 (Ala.Civ.App. 2003) (quoting Bethea v. Bruno's, Inc., 741 So.2d 1090, 1092
(Ala.Civ.App. 1999)). "The purpose of this section is to enable an employer to make a speedy examination, afford proper treatment and protect himself against simulated or exaggerated claims."Gold Kist, Inc. v. Dumas, 442 So.2d 115, 116 (Ala.Civ.App. 1983) (citing Ex parte Stith Coal Co., 213 Ala. 399,104 So. 756 (1925)).
Jones does not dispute that he did not provide timely written
notice of the injury. As our Supreme Court held in Ex parteHarris, 590 So.2d 285 (Ala. 1991), however, while § 25-5-78, Ala. Code 1975, does generally require written notice, "written notice is not required if it is shown that an employer had actual notice of the injury. Oral notice is sufficient to constitute actual notice." 590 So.2d at 287. In Alfa Life Insurance Corp.v. Culverhouse, 729 So.2d 325, 328 (Ala. 1999), our Supreme Court explained that written notice is not required because
 "after reading the language now codified at § 25-5-78 in pari materia with that codified at §§ 25-5-59
and 25-5-88[, Ala. Code 1975,] . . . the Court concluded the employer's actual knowledge should be considered the equivalent of the statutory notice, `in keeping with the humane spirit of compensation laws.' [Ex parte Stith Coal Co.,] 213 Ala. [399,] 400, 104 So. [756,] 757 [(1925)]."
In this case, the trial court concluded, after "consider[ing] the testimony of [Jones], his mother, Sally Jones, and the job superintendent, Paul Ellis" that while Jones gave ARD oral notice that he had hurt his back on the job, "he did not give a date ortime of the alleged injury. Actual notice was apparently provided much later with a first report of injury form showing a date of July 21, 1999, which is after this lawsuit was filed." (Emphasis added.) Because of this failure to inform ARD of the date or time of the injury, the trial court concluded that ARD had not been given timely notice of the injury sufficient to meet the purposes of § 25-5-78.
As we explained in Premdor Corp., 880 So.2d at 1154:
 "`[W]ritten notice is not required if the employer had actual knowledge that the employee was injured in the scope of his or her employment. *Page 135 Wal-Mart Stores, Inc. v. Elliott, 650 So.2d 906, 908 (Ala.Civ.App. 1994). The employer must have actual knowledge that the employee's injury was connected to the employee's work activities. Id.'
 "Ex parte Brown Root, Inc., 726 So.2d 601, 602
(Ala. 1998). In Russell Coal Co. v. Williams, 550 So.2d 1007 (Ala.Civ.App. 1989), this court defined `actual knowledge' for this purpose as:
 "`"knowledge of such information as would put a reasonable man on inquiry. . . . Mere knowledge of disability following a traumatic injury is not sufficient, for the facts and circumstances of either the disability or the injury must be such as would put a reasonable man on inquiry that the disability is work-related.'"
 "550 So.2d at 1012 (quoting Pojanowski v. Hart, 288 Minn. 77, 81, 178 N.W.2d 913, 916 (1970))."
With regard to what he told Ellis on the Saturday following the injury, Jones testified:
 "[Jones's counsel:] Did you tell [Ellis] what caused you not to be able to go to work?
"[Jones:] Yes, sir.
"[Jones's counsel:] What did you say?
 "[Jones:] I told him that my legs [were] numb and my back was hurting[;] I couldn't — I wasn't able — you know, I told him I was in pain and I wasn't able to come to work.
 "[Jones's counsel:] Did you tell him about the February 17 incident?
 "[Jones:] Yes, I told him I probably strained my back, and yes, I did.
 "[Jones's counsel:] Did Mr. Ellis write up a written report for that incident?
 "[Jones:] No, sir. I did not see him write up one at the present time, no, sir, I did not."
On cross-examination, Jones testified similarly:
 "[ARD's counsel:] All right. And was that the first day you say you reported [the injury] to some[one] there at ARD Contracting?
 "[Jones:] I reported it that Saturday, because I couldn't get out of bed.
"[ARD's counsel:] All right. How did you report that?
"[Jones:] My mother took me.
"[ARD's counsel:] Took you where?
"[Jones:] To the job site.
". . . .
 "[ARD's counsel:] All right. And what did Mr. Ellis tell you then?
 "[Jones:] Well, . . . [Ellis] didn't really say much. I told him I was going to go back home and see how I feel or whatever. Well, anyway he didn't have much to say. I went in and reported that I wasn't able to get there and make it to work that day."
Jones's mother also testified about the conversation between Ellis and her son:
 "[Jones's counsel:] Now, did you hear Mr. Jones report the reason for his inability to why he couldn't show up at work?
"[Sally Jones:] Yes, I did.
 "[Jones's counsel:] What did he say, ma'am? To the best of your recollection, what did he say?
 "[Sally Jones:] I cannot quote word for word what he said. I can tell you that he did inform his boss man . . . he told them why he wasn't at work.
 "[Jones's counsel:] To the best of your recollection, what did he say?
 "[Sally Jones:] Well, he told them that when he woke up, that he couldn't *Page 136 
move and that he was hurting and he couldn't move."
Finally, Jones's supervisor, Paul Ellis, testified concerning the conversation he had with Jones on Saturday, February 20, 1999:
 "[ARD's counsel:] Now, Mr. Jones is claiming that on February 17, 1999, he injured himself while removing some siding or something from a wall up on that job. Do you have any knowledge of that?
 "[Ellis:] The only knowledge I've got is him and his mother came in that Saturday. He didn't show up for work for a few days[1] and he and his mother came in Saturday and said he had hurt himself on the floor.
 "[ARD's counsel:] All right. Did he say specifically what part of himself he had injured?
"[Ellis:] He said he had hurt his back.
 "[ARD's counsel:] But did he give a date as to when he had hurt himself?
"[Ellis:] No, he didn't.
". . . .
 "[ARD's counsel:] At any time since [he was laid off] has Mr. Jones ever contacted you and said that he injured his back on February 17, 1999?
"[Ellis:] No, he hadn't.
". . . .
 "[ARD's counsel:] At any time before that Saturday, did you see anything about Mr. Jones that made you think he had somehow been injured on the 17th of February?
"[Ellis:] No, sir."
On cross-examination, Ellis explained why he did not fill out a notice-of-injury report on that Saturday:
 "[Jones's counsel:] But Mr. Jones did come into you on Saturday and reported this, though, correct?
 "[Ellis:] Yeah. He said he had come in with his mother and said his arm and back were sore.
"[Jones's counsel:] Okay?
 "[Ellis:] But usually at that point we would fill out a first report [of injury], but we just, you know — he didn't mention it was that big of [a] deal. Because some people come in all the time and report little things.
 "[Jones's counsel:] So you did have the report of injury, but you didn't fill out a written report, correct?
"[Ellis:] Right."
ARD's counsel followed the above testimony with the following:
 "[ARD's counsel:] Again, just to clarify, when Mr. Jones came in with his mother on that Saturday saying his arm and/or back was hurt, he didn't specifically say: `And I injured it a couple of days ago on the 17th taking those forms off the wall?'
"[Ellis:] No.
 "[ARD's counsel:] Because if he had, well, first of all, you would have filled out a first report of injury?
"[Ellis:] Correct."
Finally, Jones's counsel finished this line of questioning of Ellis:
 "[Jones's counsel:] Well, Mr. Jones did indicate to you that he had some sort of injury, correct?
"[Ellis:] Correct.
 "[Jones's counsel:] And you had some notice that this injury might have occurred on the job, correct? *Page 137 
"[Ellis:] Yeah."
From the totality of the above testimony it is clear that Jones informed Ellis that he had injured his back while on the job. It is also evident, as the trial court found, that Jones did not inform Ellis of the exact date or time of his injury. However, "`[i]f . . . the employer has some information connecting work activity with an injury, it may be put on reasonable notice to investigate further.'" Davis v. Paragon Builders,652 So.2d 762, 764 (Ala.Civ.App. 1994) (quoting Russell Coal Co. v.Williams, 550 So.2d 1007, 1012 (Ala.Civ.App. 1989)). In this case, we conclude that Jones provided Ellis with enough information to put ARD on notice that it should investigate the injury further.
Ellis understood Jones's claim that he had injured his back while on the job; he testified that Jones had come into work on Saturday, February 20, 1999, and told Ellis about the back injury; and he admitted that after Jones told him about the injury "usually at that point we would fill out a first report [of injury]" but that he had not done so because of his own judgment that Jones did not make a big deal out of the injury. The information Jones provided to Ellis was sufficient to give ARD "actual knowledge" sufficient to "put a reasonable man on inquiry" of a work-related injury. Premdor Corp., supra. Actual notice should provide the employer "the opportunity for investigation of the accident and injury and to protect against simulated and exaggerated claims." Beatrice Foods Co. v.Clemons, 54 Ala.App. 150, 153, 306 So.2d 18, 20-21 (Civ.App. 1975). Jones's oral notice did just that, putting the employer on notice that the injury had occurred at work and within a few days prior to the time notice was given. See Davis, supra. Even minimal further investigation would have revealed the exact date on which Jones claimed he had injured his back.
We conclude that the oral notice provided by Jones to Ellis was sufficient to meet the threshold notice requirements imposed by applicable precedent of our Supreme Court and this court. Accordingly, we reverse the judgment of the trial court, and we remand the cause for further proceedings.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
[1] Jones's testimony indicates that he did not take any time off of work until the Saturday in question.