BRYAN, Judge.
 

 Equity Group — Alabama Division d/b/a Keystone Foods (“Keystone Foods”) appeals from a judgment determining that Rodney Dewayne Harris sustained a com-pensable injury and awarding him workers’ compensation benefits, pursuant to the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975 (“the Act”). We affirm in part, reverse in part, and remand.
 

 In February 2008, Harris sued Keystone Foods, seeking workers’ compensation benefits. In his complaint, Harris alleged that he had injured his back in a workplace accident on July 6, 2007. Keystone Foods filed an answer denying the material allegations of the complaint. Keystone Foods subsequently sought a hearing to determine whether Harris had sustained a compensable injury. Specifically, Keystone Foods sought a determination whether Harris had actually been involved in an accident at work and whether Harris had given proper notice of his alleged work-related back injury to Keystone Foods. In January 2009, the trial court held an evidentiary hearing to determine compensability.
 

 On Februaiy 28, 2009, the trial court entered a judgment finding that Harris had injured his back in an accident at work on July 6, 2007, and that Keystone Foods had received sufficient notice that Harris had injured his back at work. The trial court concluded that Harris had sustained a compensable injury to his back, and the trial court ordered as follows:
 

 “[Keystone Foods shall] provide [Harris] with an authorized treating physician to be selected from a panel of four neurosurgeons. Further, [Keystone Foods] shall immediately authorize any and all procedures-that said doctor would deem relevant and necessary so as to restore [Harris] to health.
 

 “Furthermore, it is the order of this Court that [Harris] is entitled to workers’] compensation benefits retroactive to the date of the [accident on] July 6, 2007[,] and continuing to such time that he attains maximum medical improvement from his back condition. Said benefits are to be paid at the compensation rate for [Harris’s] injury ... and continuing to such time as his authorizing treating physician determines [Harris] to be at maximum medical improvement.”
 

 After the denial of its postjudgment motion, Keystone Foods appealed.
 

 Initially, we consider whether the trial court’s February 23, 2009, judgment is a final judgment that can support an appeal. An appeal typically lies only from a final judgment.
 
 Palughi v. Dow,
 
 659 So.2d 112, 113 (Ala.1995). Recently, this court clarified that a “judgment determining compensability and awarding both medical benefits and temporary-total-disability benefits [is] final for purposes of appeal.”
 
 Fluor Enters., Inc. v. Lawshe,
 
 16 So.3d 96, 99 (Ala.Civ.App.2009).
 
 See Belcher-Robinson Foundry, LLC v. Narr,
 
 42 So.3d 774 (Ala.Civ.App.2010) (following the reasoning of
 
 Fluor Enterprises
 
 but noting that it is in tension with earlier decisions of this court). In this case, the trial court’s judgment determined that Harris had sustained a compensable injury, and it
 
 *303
 
 required Keystone Foods to pay for the necessary medical treatment of that injury. Additionally, the trial court awarded Harris “benefits to be paid at the compensation, rate” until Harris reaches maximum medical improvement. A trial court may award temporary-total-disability benefits or temporary-partial-disability benefits before an employee’s permanent disability can be determined. § 25-5-57(a), Ala. Code 1975. In order to recover permanent-disability benefits, an employee must have reached maximum medical improvement.
 
 Ex parte Phenix Rental Ctr.,
 
 873 So.2d 226, 230-32 (Ala.2003). By referring to the “compensation rate,” awarding benefits pursuant to that compensation rate until the time when Harris reaches maximum medical improvement, and making no calculations that would be necessary for an award of temporary-partial-disability benefits under § 25-^5 — 57(a)(2), Ala.Code 1975, the trial court seemingly awarded Harris temporary-total-disability benefits under § 25-5-57(a)(l), Ala.Code 1975. Because the trial court’s judgment determined that Harris had sustained a compensable injury and awarded Harris medical benefits and temporary-total-disability benefits, the judgment is a final judgment that can support an appeal.
 
 Fluor Enterprises
 
 and
 
 Belcher-Robinson Foundry.
 
 Therefore, we conclude that this appeal is properly before us.
 

 Factual Background
 

 At trial, Harris testified that he injured his back at work on Friday, July 6, 2007, as he “lifted up and pulled” “the drain” of a “macerator” machine or “grinder machine.” Harris testified that the alleged accident occurred at approximately 2:15 p.m., 15 minutes before his final shift of the work week was scheduled to end. That day was the last day that Harris was scheduled to work before taking a week-long vacation beginning the following Monday. Harris acknowledged that he knew company policy required him to report any workplace accident to a supervisor immediately. However, Harris did not report an accident to a supervisor on the date of the alleged accident. When asked at trial why he did not immediately report the alleged accident, Harris stated: “I just didn’t. [I tjhought it wasn’t hurt that bad.” Harris stated that he initially believed that he had pulled a muscle in his back. He testified that he had strained his back on past occasions and had recovered from those strains. Harris’s wife, April Harris (“April”), testified that Harris returned home from work on July 6 with an injured back. She further testified that, when she asked Harris what had happened to his back, he told her that he had injured his back at work earlier that day.
 

 Harris also testified that, at the time of the alleged accident, there was no supervisor in the vicinity. Joseph Jenkins, one of Harris’s supervisors at Keystone Foods, testified at trial that he did not remember if he was at work at the time of Harris’s alleged accident. Jenkins stated that a supervisor would have been present at work when the alleged accident occurred. Pam Stone, another one of Harris’s supervisors, testified at trial that she did not remember whether she was at work when the alleged accident occurred. She testified that a supervisor would have been present at that time, however.
 

 Harris testified that the pain in his back became worse over the following weekend. April testified that Harris experienced considerable back pain during that weekend. On Monday, July 9, the first day of his vacation, Harris visited either Dr. Elliot Saltz or his partner, a Dr. Taher, complaining of back pain. The medical record of that visit indicates that Harris’s back pain began the previous day, which was two days after the alleged accident. Har
 
 *304
 
 ris testified that he continued to experience back pain during the week of his vacation. April testified that on Sunday, July 15, Harris fell on their front steps because his leg had become numb. That same day, Harris again visited either Dr. Saltz or Dr. Taher, complaining of back pain and leg numbness. Harris testified that he told Dr. Saltz and Dr. Taher that he had injured his back at work. April testified at trial that she had accompanied Harris on his office visits of July 9 and July 15 and that she and Harris had told the physicians at some point that he had injured his back at work. Harris’s mother, Catherine Harris (“Catherine”), accompanied Harris on the July 15 visit, and she testified at trial that she told the physician during that visit that Harris had injured his back at work. However, the medical records of the July 9 and July 15 visits do not indicate that Harris’s back pain was attributed to his employment.
 

 April testified that, on Monday, July 16, the day Harris was scheduled to return to work from vacation, she telephoned Jenkins to report that Harris would be unable to work that day due to his back pain. According to April, she told Jenkins at that time that Harris had injured his back in an accident at work on July 6. However, Jenkins testified at trial that April never informed him that Harris had suffered an accident at work. Stone testified that April called her on Monday, July 16 to report that Harris had fallen on some stairs and that he would not be coming into work. Stone testified that April did not indicate that Harris had had an accident at work. During the subsequent weeks, April and Stone had several telephone conversations in which April reported on the condition of Harris’s back. Stone testified that she was never notified that Harris had suffered an accident at work. Stone testified that at some point she prepared “papers” pertaining to the federal Family Medical Leave Act for April to pick up on Harris’s behalf; the record does not indicate whether Harris ever filed those documents.
 

 On July 18, 2007, Harris and April visited Dr. James White, a neurosurgeon, to whom Harris had been referred by Dr. Saltz. A “history and physical” form completed on that visit indicates Harris’s chief complaint: “[lower back pain], bilateral hip, leg pain [and] numbness. Toes numb [on left] foot x 3 months.” That form also indicates that there was no known date of “injury” associated with Harris’s complaints. Dr. White’s notes of that visit state, in pertinent part: “[Harris] does not relate a job injury but [that] he just got up out of bed after a vacation. His back popped and he has had severe pain in his low back and left leg.” Harris, accompanied by Catherine and April, was treated by Dr. White again on July 25, 2007. At that time, Dr. White diagnosed Harris as having a “large” disk herniation and severe degenerative disk disease, both in his lower back. Dr. White testified by deposition that Harris told him that he was not injured at work.
 

 Harris, however, testified that he told Dr. White that he had injured his back in an accident at work. April also disputed Dr. White’s testimony stating that Harris did not attribute his back pain to an accident at work. Harris, who is legally deaf, testified that he had difficulty communicating with or understanding Dr. White. According to Harris, he told Dr. White that he needed to read Dr. White’s lips to understand him. Harris stated that Dr. White, however, walked back and forth while talking to Harris, making it difficult for Harris to understand him. The record on appeal indicates that Catherine and April helped Harris communicate with Dr. White. Both Catherine and April testified that Harris had difficulty communicating
 
 *305
 
 with and understanding Dr. White. However, Dr. White testified that, “although there was some communication problem,” he believed that Harris could understand him.
 

 On August 17, 2007, Harris filed a claim with the United Food and Commercial Workers Union Local 1995 (“the union”), seeking disability benefits. The claim form indicates that Harris sought disability benefits for a ruptured disk; that he asserted that his injury was caused by his employment; and that he asserted that his claim was not “based on an accident” but instead was based on “repetitive motion [and] lifting for several years.” According to April, the union denied the claim and informed Harris that he instead needed to file a workers’ compensation claim.
 

 The record contains a “Workers Compensation Retail Prescription Drug Program” card issued to Harris by the workers’ compensation insurance carrier of Keystone Foods. The card, which April testified Harris received in the mail, indicates a “date of injury” of August 28, 2007, several weeks after the alleged accident of July 6. It is unclear how that date of injury was determined. Although the trial court found that Harris received the card on September 17, 2007, the evidence in the record does not seem to indicate the exact date Harris received the card. In its brief, Keystone Foods asserts that the card was erroneously issued, but Keystone Foods cites no direct evidence in the record supporting that assertion.
 

 On September 10, 2007, Martha Jacobs, the safety manager at Keystone Foods, completed an “accident investigation report” regarding Harris’s injured back. The report lists the “date of injury” as “unknown” but has a notation in the margin indicating that Harris had filed a disability claim with the union on August 23, 2007.
 

 At some point, Harris asked Dr. Saltz and Dr. Taher for a written statement indicating that Harris’s back injury was caused by a work accident. Dr. Saltz and Dr. Taher responded with a letter stating that they were not comfortable making such a statement because they had no documentation of a workplace accident and they could not remember being told about any such accident.
 

 Discussion
 

 Standard of Review
 

 Section 25-5-81(e), Ala.Code 1975, provides this court’s standard of review:
 

 “(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
 

 “(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.”
 

 Substantial evidence is “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
 
 Ex parte Trinity Indus., Inc.,
 
 680 So.2d 262, 268 (Ala.1996) (quoting
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989)).
 

 “Our review is restricted to a determination of whether the trial court’s factual findings are supported by substantial evidence. Ala.Code 1975, § 25-5-81(e)(2). This statutorily mandated scope of review does not permit this court to reverse the trial court’s judgment based on a particular factual finding on the ground that substantial evidence supports a contrary factual finding; rather, it permits this court to reverse the trial court’s judgment only if its factual find
 
 *306
 
 ing is not supported by substantial evidence.
 
 See Ex parte M & D Mech. Contractors, Inc.,
 
 725 So.2d 292 (Ala.1998). A trial court’s findings of fact on conflicting evidence are conclusive if they are supported by substantial evidence.
 
 Edwards v. Jesse Stutts, Inc.,
 
 655 So.2d 1012 (Ala.Civ.App.1995).”
 

 Landers v. Lowe’s Home Ctrs., Inc.,
 
 14 So.3d 144, 151 (Ala.Civ.App.2007) (opinion on original submission). The “appellate court must view the facts in the light most favorable to the findings of the trial court.”
 
 Ex parte Professional Bus. Owners Ass’n Workers’ Comp. Fund,
 
 867 So.2d 1099, 1102 (Ala.2003).
 

 I.
 

 Keystone Foods argues that the trial court erred in determining that Harris sustained a compensable back injury. As part of that argument, Keystone Foods argues that Harris’s back injury is not compensable because, Keystone Foods says, it did not receive sufficient notice of that injury.
 

 “ ‘In
 
 United Auto Workers Local 1155 v. Fortenberry,
 
 926 So.2d 356 (Ala.Civ.App.2005), we briefly summarized the pertinent provisions of the Act governing notice:
 

 •“ ‘The pertinent notice provisions in the Act are contained in § 25-5-78, Ala.Code 1975. That section provides that “an injured employee or the employee’s representative, within five days after the occurrence of an accident, shall give or cause to be given to the employer written notice of the accident.” Failure to give notice, in the absence of “physical or mental incapacity, other than minority, fraud or deceit, or equal good reason,” will defeat a claimant’s entitlement to medical benefits and compensation accrued before notice is ultimately provided.
 
 Id.
 
 However, § 25-5-78 also provides that
 
 “no
 
 compensation shall be payable unless written notice is given within 90 days after the occurrence of the accident or, if death results, within 90 days after the death” (emphasis added [in Fortenberry]). Thus, while a failure to notify an employer of an accident within 5 days of its occurrence may be excusable under certain circumstances, and will work only a partial forfeiture of benefits, a failure to effect notice within 90 days is an absolute bar to recovery under the Act.
 
 See generally Ex parte-Murray,
 
 490 So.2d 1230, 1232-33 (Ala.1984). “The employee has the burden of proving that the employer had notice or knowledge of the injury.”
 
 Wal-Mart Stores, Inc. v. Elliott,
 
 650 So.2d 906, 908 (Ala.Civ.App.1994).’
 

 “Fortenberry,
 
 926 So.2d at 359. Although § 25-5-78 refers to notice of an ‘accident,’ Alabama caselaw indicates that the pertinent inquiry is whether the employer has received actual notice of the pertinent
 
 injury. See, e.g., Steele v. General Motors Corp.,
 
 705 So.2d 402, 404-06 (Ala.Civ.App.1997) (reversing trial court’s judgment denying benefits; holding that worker’s back injury did not manifest itself until he had enrolled in an alcohol-treatment program more than five days after accident and that oral notice of injury was given).”
 

 Honda Mfg. of Alabama, LLC v. Alford,
 
 6 So.3d 22, 25-26 (Ala.Civ.App.2007).
 

 “In
 
 Jones v. ARD Contracting, Inc.,
 
 910 So.2d 132 (Ala.Civ.App.2004), this court explained the requirement of notice under § 25-5-78 and how that requirement may be satisfied by oral notice instead of the written notice contemplated by the statute.
 

 “ ‘ “Section 25-5-78, Ala.Code 1975, provides, in pertinent part, that ‘no
 
 *307
 
 compensation shall be payable [to an injured employee] unless written notice is given within 90 days after the occurrence of the accident....’ ‘An employee is not entitled to workers’ compensation benefits if [he] fails to provide notice.’ ”
 

 “
 
 ‘Premdor Corp. v. Jones,
 
 880 So.2d 1148, 1153 (Ala.Civ.App.2003) (quoting
 
 Bethea v. Bruno’s, Inc.,
 
 741 So.2d 1090, 1092 (Ala.Civ.App.1999)). “The purpose of this section is to enable an employer to make a speedy examination, afford proper treatment and protect himself against simulated or exaggerated claims.”
 
 Gold Kist, Inc. v. Dumas,
 
 442 So.2d 115, 116 (Ala.Civ.App.1983) (citing
 
 Ex parte Stith Coal Co.,
 
 213 Ala. 399, 104 So. 756 (1925)).
 

 “ ‘.... As our Supreme Court held in
 
 Ex parte Harris,
 
 590 So.2d 285 (Ala.1991), however, while § 25-5-78, Ala.Code 1975, does generally require written notice, “written notice is not required if it is shown that an employer had actual notice of the injury. Oral notice is sufficient to constitute actual notice.” 590 So.2d at 287. In
 
 Alfa Life Insurance Corp. v. Culverhouse,
 
 729 So.2d 325, 328 (Ala.1999), our Supreme Court explained that written notice is not required because
 

 “ ‘ “after reading the language now codified at § 25-5-78
 
 in pari mate-ria
 
 with that codified at §§ 25-5-59 and 25-5-88[, Ala.Code 1975,] ... the Court concluded the employer’s actual knowledge should be considered the equivalent of the statutory notice, ‘in keeping with the humane spirit of compensation laws.’
 
 [Ex parte Stith Coal Co.,]
 
 213 Ala. [399,] 400, 104 So. [756,] 757 [(1925)].’”
 

 “Jones,
 
 910 So.2d at 134.”
 

 Goodyear Tire & Rubber Co. v. Long,
 
 31 So.3d 715, 719 (Ala.Civ.App.2009).
 

 In this case, the trial court, relying on April’s testimony, found that April had told one of Harris’s supervisors on July 16, 2007, that Harris had injured his back at work 10 days earlier, on July 6, 2007. “Knowledge on the part of a supervisory or representative agent of the employer that a work-related injury has occurred will generally be imputed to the employer.”
 
 Wal-Mart Stores, Inc. v. Elliott,
 
 650 So.2d 906, 908 (Ala.Civ.App.1994). Although the record contained testimony by employees of Keystone Foods contradicting April’s testimony regarding notice, the trial court assigned greater weight to April’s testimony. “It is axiomatic that it is the [fact-finder’s] province to resolve conflicts in testimony ... and to judge the credibility of witnesses.”
 
 Flint Constr. Co. v. Hall,
 
 904 So.2d 236, 250 (Ala.2004). April’s testimony constitutes substantial evidence that Keystone Foods received oral notice of the alleged work-related injury within 90 days of the date the injury allegedly arose. Therefore, no “absolute bar to recovery” ever arose under § 25-5-78.
 
 Goodyear
 
 and
 
 Honda.
 

 Moreover, the record contains further evidence indicating that Keystone Foods was notified of Harris’s alleged work-related injury within 90 days. The trial court found that the issuance of the workers’ compensation prescription-drug card to Harris further supported its finding that Keystone Foods had received proper notice.
 
 [1]
 
 Moreover, on September 10, 2007, approximately two months after
 
 *308
 
 the alleged accident of July 6, an accident-investigation report was completed by the safety manager at Keystone Foods. Although the report does not list a “date of injury,” the report indicates that Harris had a back injury that he was attributing to his work with Keystone Foods. “[I]f ... the employer has some information connecting work activity with an injury, it may be put on reasonable notice to investigate further.”
 
 Russell Coal Co. v. Williams,
 
 550 So.2d 1007, 1012 (Ala.Civ. App.1989). This additional evidence supports the trial court’s finding that Keystone Foods received notice.
 

 II.
 

 Citing § 25-5-78, Keystone Foods also argues that, because it is undisputed that Harris did not provide notice within five days of the alleged accident, he is barred from recovering any “physician’s or medical fees,” even if he provided notice during the 90-day period prescribed by § 25-5-78. In making that argument, Keystone Foods cites the language of § 25-5-78, which provides that
 

 “[i]f [five days’ written] notice is not given, the employee ... shall not be entitled to
 
 physician’s or medical fees
 
 nor any compensation which may have accrued ... unless it can be shown that the party required to give the notice had been prevented from doing so by reason of physical or mental incapacity, other than minority, fraud or deceit, or equal good reason. Notwithstanding any other provision of this section, no
 
 compensation
 
 shall be payable unless written notice is given within 90 days after the occurrence of the accident....”
 

 (Emphasis added.) Keystone Foods contends that, because the 90-day notice period found in § 25-5-78 refers only to “compensation” while the 5-day notice period refers to “physician’s or medical fees,” failure to provide notice within the 5-day period bars the recovery of those fees,
 
 i.e.,
 
 it bars the recovery of medical benefits. “Compensation” and “medical benefits” are distinct benefits under the Act. Section 25-5-1(1), Ala.Code 1975, defines “compensation” as “[t]he money benefits to be paid on account of injury or death, as provided in Articles 3 and 4” of the Act. That section further provides that “ ‘[c]om-pensation’ does not include medical and surgical treatment and attention, medicine, medical and surgical supplies, and crutches and apparatus furnished an employee on account of injury.”
 

 We do not read § 25-5-78 to preclude the award of all medical benefits if an employee fails to provide notice within five days of the work-related injury. Section 25-5-78 explicitly provides that, if five days’ notice is not given, an employee will not be entitled to medical benefits that
 
 “may have accrued”
 
 before the date of notice. (Emphasis added.) That section does not bar any subsequent medical benefits accruing after the date of notice. We note that, if an employee who provides notice within the 90-day period but outside the 5-day period establishes a “good reason” for providing notice outside the 5-day period, a trial court may award benefits accruing from the date of the injury rather than from the date of notice.
 
 See, e.g., Cook Transports, Inc. v. Beavers,
 
 528 So.2d 875 (Ala.Civ.App.1988). Keystone Foods cites no caselaw applying § 25-5-78 to preclude all medical benefits when notice was given outside the 5-day notice period but within the 90-day notice period. Harris’s failure to provide five days’ notice did not bar his recovery of medical benefits under § 25-5-78.
 

 III.
 

 “For an injury to be compen-sable, the employee must establish both
 
 *309
 
 legal and medical causation.
 
 County of Mobile v. Benson,
 
 521 So.2d 992 (Ala. Civ.App.1988). Once legal causation has been established, i.e., that an accident arose out of, and in the course of employment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought.”
 

 Hammons v. Roses Stores, Inc.,
 
 547 So.2d 883, 885 (Ala.Civ.App.1989).
 

 Keystone Foods also argues that Harris’s back injury is not compensable because, it says, the record does not contain substantial evidence supporting the trial court’s finding that Harris had an accident at work on July 6, 2007. Stated differently, Keystone Foods argues that Harris did not establish the existence of an accident arising out and in the course of his employment,
 
 ie.,
 
 that he did not establish legal causation.
 
 Hammons.
 

 In arguing that Harris did not have an accident at work on July 6, Keystone Foods emphasizes that Harris did not immediately report the alleged accident. However, the trial court did not assign much weight to that evidence. The trial court stated:
 

 “The court finds that [Harris] did in fact injure himself on the afternoon of the 6th day of July, 2007, late in his shift. [Harris] had previous back problems and it is logical that he assumed that he had only sprained his back or hurt a muscle and went on home without reporting the accident on the day of the injury. [Harris] was to be on vacation the next week and, therefore, did not immediately report his injury.”
 

 Keystone Foods also emphasizes that the medical records of the doctors who treated Harris in the days following his alleged accident indicate that Harris did not attribute his back injury to a workplace accident. Certainly, that evidence tends to undermine Harris’s contention that he had a workplace accident. In contradiction to those medical records and Dr. White’s testimony, which reflects his medical records, Harris, April, and Catherine each testified that Harris’s physicians were informed that he had injured his back in an accident at work. The trial court seemed to attribute at least part of this discrepancy to Harris’s deafness and his related communication problems. Regarding Harris’s treatment with Dr. White in particular, the trial court found:
 

 “[Harris] evidently had a real problem communicating with and understanding what Dr. White was saying to him.... Evidently, from the testimony[,] there was a complete breakdown in the communication between Dr. White [and Harris, and April and Catherine] tried to serve as interpreters for him....
 

 “Dr. White evidently was under the impression that [Harris] said that this was not a work related injury or [that he] did not hurt himself at work.... [Harris, Catherine, and April] deny that that statement was ever made[,] and each time he visited with Dr. White either [Catherine or April] was present to try [to] serve as an interpreter. They testified that when Dr. White would talk to [Harris] he would not look him directly in the face and that he was looking away, looking at papers and was not fully ‘attempting to communicate’ with [Harris].
 

 [[Image here]]
 

 “... [Harris’s] problems in communicating with Dr. White are substantiated by the Court’s own observations, [and Catherine and April,] who generally serve as his interpreters.”
 

 Keystone Foods contends that the union claim form submitted by Harris approximately six weeks after the alleged accident indicates that a workplace accident never
 
 *310
 
 occurred. On that form, Harris asserted that his claim was not “based on an accident” but instead was based on “repetitive motion [and] lifting for several years.” For purposes of his workers’ compensation claim, Harris’s allegation that he suddenly injured his back while lifting up and pulling the drain on the macerator machine, if believed by the fact-finder, would indicate that Harris had an “accident.”
 
 See
 
 § 25-5-1(7), Ala.Code 1975 (defining an “accident” as “an unexpected or unforeseen event, happening suddenly and violently... .”);
 
 Ex parte Trinity Indus., Inc.,
 
 680 So.2d at 266 n. 3 (stating that an accident is “a sudden and traumatic external event”). However, the record does not indicate what constitutes an “accident” for purposes of the union claim form, nor does the record indicate Harris’s understanding of what constitutes and “accident” in that specific context.
 

 The trial court was presented with conflicting evidence regarding whether Harris in fact had a workplace accident on July 6. “[T]he trial court is in the best position to weigh conflicting evidence and to judge the credibility of witnesses.... ”
 
 Ex parte McInish,
 
 47 So.3d 767, 773 (Ala. 2008). In finding that Harris in fact had had an accident at work on July 6, the trial court placed great weight on Harris’s own testimony stating that he had injured his back in a workplace accident. In its judgment, the trial court specifically found Harris to be a credible witness. Harris’s testimony was supported by April’s testimony that Harris had complained of injuring his back at work when he returned from work on June 6 and that he experienced considerable pain over that weekend. Additionally, the trial court noted that there was evidence tending to explain some of the discrepancies between Harris’s testimony and the medical evidence regarding whether an accident had occurred. “This court's role is not to reweigh the evidence, but to affinn the judgment of the trial court if its findings are supported by substantial evidence and, if so, if the correct legal conclusions are drawn therefrom.”
 
 Bostrom Seating, Inc. v. Adderhold,
 
 852 So.2d 784, 794 (Ala.Civ.App.2002). After a careful consideration of the evidence, we conclude that substantial evidence supports the trial court’s finding that Harris suffered a workplace accident on July 6. That is, the record contains evidence of such weight and quality that a fair-minded person in the exercise of impartial judgment could have reasonably inferred that Harris established, by the preponderance of the evidence, that the accident occurred. § 25-5-81(e) and
 
 Ex parte Trinity Indus., Inc.,
 
 680 So.2d at 268.
 

 TV.
 

 In its argument that a work-related accident never occurred,
 
 ie.,
 
 that there is not
 
 legal
 
 causation, Keystone Foods briefly contends that the lack of medical evidence relating Harris’s back injury to the accident indicates that Harris did not establish
 
 medical
 
 causation. That contention comes near the end of the argument made by Keystone Foods that the medical evidence in this case indicates that Harris did not have a workplace accident. Keystone Foods states:
 

 “[Harris] has produced absolutely no medical evidence establishing that he suffered a compensable injury on July 6, 2007[,] during the course of his employment with Keystone [Foods]. Both Dr. Saltz and Dr. Taher did not document any conversation with [Harris] or anyone on [Harris’s] behalf concerning him suffering an on-the-job accident nor did either physician remember any such conversation. However, despite no less than four medical visits in July 2007, to Dr. Saltz, Dr. Taher and Dr. White,
 
 *311
 
 [Harris] never related that his lower back and left leg pain were being attributed to any on the job accident. Accordingly, in the absence of any medical evidence that [Harris] has failed to meet his burden of establishing medical causation [sic].
 
 See Ex parte Moncrief,
 
 627 So.2d 385, 388 (Ala.1993).”
 

 Brief of Keystone Foods at 37-38. Although it is unclear whether Keystone Foods has properly presented a lack-of-medical-causation argument, out of an abundance of caution we will address what we understand that argument to be.
 

 To establish medical causation in cases involving an accident, “ ‘an employee must ... establish medical causation by showing that the accident caused or was a contributing cause of the injury.’ ”
 
 Page v. Cox & Cox, Inc.,
 
 892 So.2d 413, 417 (Ala.Civ.App.2004) (quoting
 
 Pair v. Jack’s Family Rests., Inc.,
 
 765 So.2d 678, 681 (Ala.Civ.App.2000)). It appears that Keystone Foods is arguing that the lack of medical evidence connecting Harris’s back injury to his accident indicates that Harris did not establish medical causation. However, “the factfinder is authorized to find the [medical] causation element absent medical evidence to that effect.”
 
 Ex parte Price,
 
 555 So.2d 1060, 1062 (Ala.1989). “It is in the overall substance and effect of the whole of the evidence, when viewed in the full context of all the lay
 
 and
 
 expert evidence, and not in the witness’s use of any magical words or phrases, that the test finds its application.”
 
 Id.
 
 at 1063.
 

 “The trial court has wide discretion in reaching its findings regarding medical causation.
 
 Ex parte USX Corp.,
 
 881 So.2d 437, 442 (Ala.2003). It may interpret the evidence according to its own best judgment.
 
 3-M Co. v. Myers,
 
 692 So.2d 134, 137 (Ala.Civ.App.1997). A trial court may infer medical causation from circumstantial evidence indicating that, before the accident, the worker was working normally with no disabling symptoms but that, immediately after-wards, those symptoms appeared and have persisted ever since.
 
 See Boise Cascade Corp. v. Jackson,
 
 997 So.2d 1042, 1047 (Ala.Civ.App.2008) (citing
 
 Alamo v. PCH Hotels & Resorts, Inc.,
 
 987 So.2d 598, 603 (Ala.Civ.App.2007) (Moore, J., concurring specially)).”
 

 Waters Bros. Contractors, Inc. v. Wimberley,
 
 20 So.3d 125, 134 (Ala.Civ.App.2009).
 

 In this case, Harris was diagnosed as having a large disk herniation in his lower back shortly after the accident. The record indicates that Harris had experienced occurrences of nondisabling back pain before his accident of July 6, 2007. However, the record suggests that the back pain experienced by Harris following his July 6 accident was a severe, disabling pain unlike the back pain he had experienced before. Accordingly, the trial court could have inferred that the accident caused or contributed to Harris’s injury.
 
 Id.
 
 Moreover, Dr. White testified that, assuming that Harris had been pushing, lifting, and pulling at work, those activities could have caused his herniated disk. As noted, Harris testified that he injured his back while lifting up and pulling the drain of a macerator machine at work. Although the medical evidence in the record fails to document that Harris had a workplace accident, that evidence does not indicate that, if such an accident actually occurred, it bears no relation to Harris’s herniated disk. We conclude the record contains substantial evidence indicating that Harris established medical causation.
 

 V.
 

 Keystone Foods also argues that the trial court erred by ordering Keystone Foods to provide Harris with “an authorized physician to be selected from a panel
 
 *312
 
 of four neurosurgeons.” As part of its argument, Keystone Foods contends that it has the right to select an initial treating physician, pursuant to § 25-5-77(a), Ala. Code 1975. In
 
 Fluor Enterprises, Inc. v. Lawshe, supra,
 
 the employee, Lawshe, claimed that he had sustained a work-related injury. The employer, Fluor, denied compensability, and Lawshe began receiving treatment from a physician of his own choice, Dr. Zarzour. Fluor argued, as Keystone Foods argues in this case, that the employer’s right to select a treating physician is preserved until the trial court makes a compensability determination. This court stated:
 

 “Fluor is correct in asserting that the Workers’ Compensation Act, Ala.Code 1975, § 25-5-1 et seq., gives the employer the right to select the injured employee’s physician in the first instance.
 
 See
 
 Ala.Code 1975, § 25 — 5—77(a);
 
 see Ex parte Alabama Power Co.,
 
 863 So.2d 1099, 1102 (Ala.Civ.App.2003) (stating that the employer has the right ‘to exercise considerable control over the medical care for which it must pay, including the right to choose the employee’s physician in the first instance’). If an injured employee is dissatisfied with the physician selected by the employer, he or she may request that the employer provide a panel of four physicians from which the employee may choose a treating physician. § 25-5-77(a). In general, employers are not liable to the employee for the cost of treatment provided by an unauthorized physician.
 
 See, generally, Williams v. Union Yarn Mills,
 
 709 So.2d 71 (Ala.Civ.App.1998);
 
 Combustion Eng’g, Inc. v. Walley,
 
 541 So.2d 560, 561 (Ala.Civ.App.1989). However, in those instances when the employee is justified in seeking medical treatment without prior authorization by the employer, the employer may be liable for those expenses.
 
 See, e.g., Kimberly-Clark Corp. v. Golden,
 
 486 So.2d 435, 437 (Ala.Civ.App.1986). Justification for failing to seek prior authorization from the employer includes:
 

 “ ‘ “(1) where the employer has neglected or refused to provide the necessary medical care; (2) where the employer has consented to the selection by the employee; (3) where notice of and request for alternative care would be futile; and (4) where other circumstances exist which justify the selection of alternative care by the employee.” ’
 

 “Kimberly-Clark Corp.,
 
 486 So.2d at 437 (quoting
 
 United States v. Bear Bros., Inc.,
 
 355 So.2d 1133, 1138 n. 2 (Ala.Civ.App.1978)). Fluor does not dispute that it is liable for Dr. Zarz-our’s treatment of Lawshe during the period between the denial of Lawshe’s compensation claim and the trial court’s determination that Lawshe’s injury was indeed compensable. Instead, Fluor asserts that, at the time the injury was determined to be compensable, its right to select a physician to provide treatment to Lawshe attached and that the trial court’s order has impermissibly usurped that right by permitting Lawshe to choose his own physician. Lawshe counters with the argument that Fluor lost its right to choose the authorized treating physician by failing to exercise that right when it denied the compensability of Lawshe’s injury.”
 

 Fluor,
 
 16 So.3d at 99-100.
 

 This court concluded:
 

 “The employer’s failure to render the necessary treatment transfers its right to select the treating physician to the employee just like authorizing the injured employee to select his own physician does. Once the employee is entitled to and elects to choose his or her
 
 *313
 
 own physician, treatment by that physician can continue as long as the employee is satisfied with the treatment, subject to the employer’s right to challenge medical expenses or treatments it believes are not reasonably necessary or inappropriate under § 25-5-77(a) or (i)[, Ala.Code 1975].”
 

 16 So.3d at 103.
 

 In this case, the trial court determined that Keystone Foods received proper notice of Harris’s work-related injury. However, Keystone Foods did not provide medical treatment to Harris for that injury following that notice, and the trial court later determined Harris’s injury to be compensable. Therefore, Keystone Foods has forfeited its right to select an initial treating physician in this case.
 
 Fluor.
 
 The physicians who treated Harris following the date of notice are deemed to have been implicitly authorized.
 
 Id.
 

 Although we disagree with Keystone Foods’ argument that it retained the right to select a treating physician until compensability had been determined, we agree with Keystone Foods that the trial court erred by granting Harris the right to select a physician from a panel of four neurosurgeons. Under § 25-5-77(a), an employee who becomes dissatisfied with his or her authorized treating physician and notifies the employer of such dissatisfaction is entitled to select a physician from a panel of four physicians selected by the employer. However, the record does not indicate that that procedure has been implicated in this case. Therefore, the trial court’s judgment erroneously required Keystone Foods to provide Harris with a panel of four neurosurgeons. Accordingly, we reverse that part of the trial court’s judgment ordering Keystone Foods to provide Harris with a panel of four neurosurgeons from which to choose a treating physician. If Harris should become dissatisfied with his treating physician, Harris would, upon notifying Keystone Foods of his dissatisfaction, be entitled to select a physician from a panel of four physician selected by Keystone Foods at that point. § 25-5-77(a).
 

 VI.
 

 Keystone Foods also argues that the trial court erred by awarding benefits retroactive to the date of the accident rather than retroactive to the date of notice. In
 
 Ex parte Murray,
 
 490 So.2d 1230, 1232-33 (Ala.1984), our supreme court stated that, if there is no good reason for the employee’s failure to notify the employer of an injury within 5 days, but the employer receives notice within 90 days of the injury, then the employee forfeits benefits accrued up to the date of notice. Harris concedes that the trial court should have awarded benefits commencing with the date of notice instead of the date of the accident. Therefore, we reverse that part of the trial court’s judgment awarding benefits from the date of the accident rather than from the date of notice.
 

 Conclusion
 

 We reverse the trial court’s judgment insofar as it (1) ordered Keystone Foods to provide Harris with a panel of four neurosurgeons from which to choose a treating physician and (2) awarded benefits from the date of the accident rather than from the date of notice, and we remand the case. In all other respects, we affirm the trial court’s judgment.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . As noted, the trial court found that Harris received the card on September 17, 2007, but the evidence in the record does not indicate when Harris received the card. Keystone Foods does not contend that the card was not issued within 90 days of July 6, but it instead contends that the card was erroneously issued.