PITTMAN, Judge.
Brenda Joyce Smith appeals from a judgment of the Baldwin Circuit Court (“the trial court”) ruling that Brett/Robinson Construction Company, Inc. (“the employer”), is not required, pursuant to the Alabama Workers’ Compensation Act, Ala. Code 1975, § 25-5-1 et seq., to pay for additional diagnostic and treatment procedures relating to injuries Smith claims she suffered as a result of an on-the-job accident. We affirm the trial court’s judgment.
Smith, who is a construction superintendent, injui'ed her left knee when she tripped over a pallet of tile and fell at her place of employment. In her brief to this court, Smith suggests that the fall resulted in a tom meniscus that has not been repaired. The trial court determined, however, that Smith’s current problems are caused by arthritis and are unrelated to the accident. .Smith responds by asserting that, if her problems are caused by arthritis, that arthritis was caused or accelerated by the accident.
The workplace accident occurred in May 2013. Smith testified that she has been in pain since that time. Approximately six weeks after the accident, Dr. Greg Terral, Smith’s initial authorized treating physician, performed arthroscopic surgery on Smith’s knee. Notes from that surgery identify Smith’s presurgery diagnosis as “[l]eft knee osteoarthritis, suspected men-iscal pathology,” and identify her postoperative diagnosis as “[l]eft knee, diffuse grade III chondromalacia of the medial and patellofemoral compartment with unstable chondral tissue.” Dr. Terral’s notes state further that “[findings ... [were] that of intact meniscal tissue.”
Smith testified that, after surgery, her pain worsened and that she requested a new authorized treating physician. Smith chose Dr. Joseph McGowin from a panel of four physicians. See § 25-5-77(a), Ala. Code 1975. Smith first saw Dr. McGowin on October 21, 2013. Dr. McGowin’s notes from that visit indicate that magnetic resonance imaging (“MRI”) performed in connection with Dr. Terral’s treatment of Smith showed “a lateral compartment bone bruise, some degenerative changes and possible meniscal tear.” Those notes go on to state, however, that Smith had undergone arthroscopic surgery “with no evident meniscal tears but did have medial and lateral compartment arthritis,”
After examining Smith, Dr. McGowin noted: “I think that [Smith] had a contusion and sprain of the knee initially with a bone bruise that resolved on subsequent MRI.” He noted further that Smith’s “main symptoms now seem to be from the arthritis which preexisted her fall” and that there wex-e “[n]o evident meniscal *1115 tears or anterior cruciate ligament tear[s].” Dr. McGowin recommended physical therapy.
Smith saw Dr. McGowin again on November 14, 2013. Dr. McGowin’s notes from that visit state that he had “reviewed again the MRI and the surgical pictures” and that “I don’t know that there is a lot to do here.” Dr. McGowin also ordered a bone scan, the results of which were “suggestive of osteoarthritis.”
Smith saw Dr. McGowin again on November 26, 2013. Dr. McGowin’s notes from that visit reiterate that the results of the bone scan were “suggestive of arthritis consistent with what was seen on photos from surgery.” Dr. McGowin also stated that, “[g]iven the time frame [of] approximately 6 weeks from [Smith’s] on the job injury to surgery[,] I do not believe arthritis noted [during] surgery was caused by the on the job injury.” As Smith points out, however, Dr. McGowin did state further that “[c]ertainly her symptoms may have been the result of injury and aggravation of arthritis.”
On January 16, 2014, Dr. McGowin determined that Smith was at maximum medical improvement, assigned her a 5% permanent partial impairment of the left leg, and released her to return to work. Smith’s coworkers and supervisors testified that Smith had never complained of knee pain before the accident and that, after she returned to work in January 2014, they witnessed her consistently demonstrating pain or limping.
Smith continued to suffer from pain and, on November 12, 2014, saw Dr. McGowin again. Dr. McGowin noted at that time that “[u]nfortunately I think this is still mostly going to be arthritic in nature” but that Smith had stated “she feels like some shifting.” Dr. McGowin indicated in his notes that an MRI would be ordered. In her brief to this court, Smith points to a portion of the appellate record containing what appears to be a report from an MRI performed on November 13, 2014. Smith asserts that that report shows that there was a “‘tear’ of her ‘medial meniscus.’” The copy of the report in the record is not entirely legible, but it appears to state as follows:
“IMPRESSION: Mild anterior cruciate and limited posterior cruciate chronic sprain injuries with the bulk of the anterior and cruciate ligaments intact; mild to moderate retropatellar chondromala-cia chronic; small to moderate joint effusion; limited chronic intrasubstance tear posterior horn medial meniscus.”
A record created by Dr. McGowin on November 26, 2014, indicates that an MRI report showed “a little intrasubstance degeneration of the medial meniscus, the chondral changes and a little edema in the cruciate ligaments but nothing that shows any reason to consider that surgery would help.” Dr. McGowin’s record states that Smith was upset to learn of Dr. McGowin’s opinion and that Dr. McGowin informed her that there was “no cure for arthritis.”
One of Smith’s coworkers testified during the trial that, on one occasion after Smith had returned to work, the coworker had heard Smith “holler” in the employee break room and that Smith had stated at that time that her knee had “popped” and that it hurt. Smith saw Dr. McGowin on February 19, 2015. Dr. McGowin’s notes indicate that Smith had informed him that, a week earlier, she had “turned, heard and felt a pop,” and that “[t]he knee has had increased pain since” that incident. Dr. McGowin noted that, in his opinion, Smith had had “a flare up” of arthritis “and possibly IT band tendinitis.” Smith testified during the trial that she had not had any additional accidents or suffered any new injuries since the workplace accident, *1116 and she denied telling Dr. McGowin that she had had a new accident or injury.
Smith saw Dr. McGowin again on March 9, 2015. Dr. McGowin’s notes state that an “MRI report is read as a meniscal capsular medial meniscal tear with tricom-partmental arthritis.” Dr. McGowin, however, stated that his own “review [of the MRI] shows some intrasubstance degeneration peripherally at the medial meniscus with no evident extension to the joint surface” and that he “really do[es] not think that this is a tear and the report is very similar to the report that [Smith] had in the past, even pre surgery.” As noted, other medical records indicate that Dr. Terral did not find a meniscus tear when he performed arthroscopic surgery on Smith. Dr. McGowin went on to state: “I think [Smith’s] main symptoms are IT band tendinitis and arthritis” and that “there is limited benefit to considering surgery.”
On April 23, 2015, Smith saw Dr. McGowin again. Dr. McGowin noted on that date that “MRIs have shown intrasub-stance degeneration or possibly complex tear of the medial meniscus” but that “[tjhere was no tear noted at arthroscopy done by Dr. Terral previously.” Dr. McGowin concluded:
“At this point there are really only 2 options. One is to consider arthroscopic examination to be certain that there is no unstable meniscal tear. [Smith] understands that this will not affect the arthritis that we know that she has and is only of limited likelihood to result in some symptom improvement for the arthritis and this would only be short term. At this point I would recommend that she see Dr. [James] Cockrell for his evaluation and consideration of arthros-copy. If surgery is not contemplated then she is probably at [maximum medical improvement].”
Smith points to a portion of the record containing a letter from a representative of the employer’s workers’ compensation insurer to Dr. McGowin, which is dated April 29, 2015. That letter states that, on February 12, 2015, Smith “had a new occurrence when she ‘turned in her kitchen and felt a pop in her knee’ causing increased knee pain since that time.” The correspondence goes on to state that an MRI performed on March 3, 2015, “indicated a medial meniscal tear” and concludes by requesting Dr. McGowin’s opinion as to whether Smith’s “current complaints are related to her original knee injury ,., or [whether] this meniscal tear is a new injury.” Dr. McGowin responded to the correspondence, stating:
“With respect [to] Ms. Smith’s current possibility of meniscal tear, it is more likely to be a recent injury given the change in MRI from November 2014 to March 2015. Given her continued symptoms throughout the period which I have seen her, it is difficult to be certain from a postoperative MRI but my opinion would be that her current aggravation of her symptoms and probability of medial meniscal tear is unrelated to original on-the-job injury given the change in MRI appearance of the medial meniscus and her increased symptoms after her February 2015 injury.”
On November 12, 2015, Smith saw Dr. Cockrell. Dr. Cockrell’s notes from that visit state:
“[Smith] wants to go ahead with diagnostic arthroscopy and meniscectomy if indicated. I have told her that her MRI shows some degenerative changes in the meniscus and there is a possibility that there could be a tear there but there is also a possibility that this could all just be coming from arthritis in which case I probably will not be able to help her much. She states that she understands *1117 that and wishes to go ahead with the procedure.”
The employer’s workers’ compensation insurer refused to pay for Smith’s surgery.
After the trial, the trial court entered a judgment ruling that the employer was not responsible for paying for the proposed additional surgery and that the employer had “properly paid for all reasonable and necessary medical treatment related to [Smith’s] May 10, 2013[,] injury.” In support of its ruling, the trial court found that Dr. Terral had performed surgery “to repair [Smith’s] torn meniscus and chondro-plasty to address the arthritis in [Smith’s] left knee,” that Dr. McGowin had “diagnosed a contusion and sprain from the initial accident and found no indication of a torn meniscus or a torn [anterior cruciate ligament],” and that Dr. McGowin had determined that Smith’s “current symptoms are from arthritis in the knee [and] are unrelated to the on the job accident.” The trial court also noted that Dr. Cockrell had informed Smith that an MRI showed degenerative changes in the meniscus in Smith’s knee, that Dr. Cockrell believed “that there was a possibility that there could be a tear” but that Dr. Cockrell also indicated that “it could just be arthritis, in which ease surgery would not be much help.” The trial court found that Dr. Cockrell did “not express any opinion on medical causation.”
The trial court found that “[t]he medical evidence ... states that [Smith’s] left knee pain and problems are due to arthritis and not the accident in question,” that Smith’s “current ... complaints and problems are not a result of her original accident and injury,” that “[t]here is no medical evidence that [Smith] needs surgery,” and that the surgery Dr. Cockrell agreed to perform “is not reasonable or necessary as a result of the original accident.” The trial court concluded that the employer “has provided all reasonable and necessary medical treatment” for the injuries arising out of the workplace accident and that “if [Smith] insists upon surgery, she shall do so at her own expense.” Smith timely appealed.[1]
“Pursuant to [§ 25-5-77(a), Ala.Code 1975], employers are ‘financially responsible, subject to certain cost limitations, for the medical and surgical treatment obtained by an employee due to injuries received in an accident arising out of and in the course of the employee’s employment.’ Ex parte Publix Super Markets, Inc., 963 So.2d 654, 658 (Ala.Civ. App.2007). Section 25-5-77 does not make employers responsible for treatment ‘for conditions unrelated to an accident arising out of and in the course of the employee’s employment.’ Id.”
Ex parte Ward Int'l, 189 So.3d 90, 92 (Ala.Civ.App.2015).
“Section 25-5-81(e), Ala.Code 1975, provides the standard of review in workers’ compensation cases:
“‘(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“ ‘(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’
“Substantial evidence is ‘ “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’ *1118 Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989))."
White Tiger Graphics, Inc. v. Clemons, 88 So.3d 908, 910 (Ala.Civ.App.2012). We also note that the trial court, which heard the testimony ore tenus, is charged with judging the credibility of the witnesses and weighing the evidence presented. City of Thomasville v. Tate, 175 So.3d 663, 667 (Ala.Civ.App.2015).
As noted, Smith suggests that her current problems are the result of a torn meniscus caused by the workplace accident. She asserts that the testimony at trial demonstrates that she did not suffer from knee problems before the accident and that she has been in pain ever since. She points to Equity Group-Alabama Division v. Harris, 55 So.3d 299 (Ala.Civ. App.2010), for the proposition that “‘[a] trial court may infer medical causation from circumstantial evidence indicating that, before the accident, the worker was working normally with no disabling symptoms but that, immediately afterwards, those symptoms appeared and have persisted ever since.’ ” 55 So.3d at 311 (quoting Waters Bros. Contractors, Inc. v. Wimberley, 20 So.3d 125, 134 (Ala.Civ.App.2009)).
The trial court in the present case was authorized to consider evidence indicating that Smith had not suffered from knee pain until after the workplace accident; that does not mean that the trial court was required to ignore medical evidence indicating that the current condition of Smith’s knee is due to arthritis. Although we acknowledge that the medical evidence suggests a possibility of a torn meniscus, we cannot conclude that substantial evidence does not support the trial court’s conclusion. See Hammons v. Roses Stores, Inc., 547 So.2d 883, 885 (Ala.Civ. App.1989) (stating that “evidence presented by a workmen’s compensation claimant must be more than evidence of mere possibilities”). See also Landers v. Lowe’s Home Ctrs., Inc., 14 So.3d 144, 151 (Ala. Civ.App.2007) (“[The] statutorily mandated scope of review does not permit this court to reverse the trial court’s judgment based on a particular factual finding on the ground that substantial evidence supports a contrary factual finding; rather, it permits this court to reverse the trial court’s judgment only if its factual finding is not supported by substantial evidence.”).
Smith also argues that, assuming her current pain is caused by arthritis, “if employment aggravates, accelerates or combines with ... arthritis, to produce a disability, the pre-existing condition does not disqualify [Smith] from receiving worker’s compensation benefits.” She contends that, if she was able to perform her job duties before the accident, then “she did not have arthritis before the fall as far as the law is concerned.”
As Smith points out, “ ‘[i]t is well settled that no preexisting condition is deemed to exist for the purposes of a workers’ compensation award if the employee was able to perform the duties of his job before suffering the injury made the basis of the claim.’” Reeves Rubber, Inc. v. Wallace, 912 So.2d 274, 279 (Ala. Civ.App.2005) (quoting BE & K Constr. Co. v. Reeves, 898 So.2d 738, 746-47 (Ala.Civ.App.2004)). That does not mean, however, that Smith was not required to prove that it was the workplace accident that actually caused her arthritis to manifest or to become aggravated. Smith relies on testimony indicating that she was not in pain before the accident and one note in Dr. McGowin’s medical records stating that Smith’s “symptoms may have been the result of injury and aggravation of arthritis.” (Emphasis added.) As noted, *1119 evidence of a mere possibility is not sufficient to demonstrate medical causation. Hammons, 547 So.2d at 885. Moreover, other evidence shows that Dr. McGowin was of the opinion that Smith’s current problems are the result of preexisting arthritis that was not caused by the workplace accident. Based on all the evidence, we cannot conclude that the trial court erred.[2]
The trial court’s judgment is supported by substantial evidence. Accordingly, that judgment is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ„ concur.

. The trial court also determined that Smith “has a fifty percent ... impairment to the use of her lower extremity” and is entitled to compensation therefor. That finding is not at issue on appeal.

. Smith places emphasis on the correspondence from the employer’s workers’ compensation insurer to Dr. McGowin. She asserts that there was no evidence of a "new” accident or injury. She suggests that Dr. McGowin's opinion was based on what Smith describes as a "fabricated story,” although Dr. McGowin’s notes do reflect that Smith relayed to him that she had "turned, heard and felt a pop,” and that her knee pain had increased. Although Dr. McGowin opined in response to the referenced letter that, assuming there indeed was a meniscus tear, it likely was not due to the initial workplace accident, he did not state definitely that there was a meniscus tear. Rather, it is clear from his notes that he believed there was no tear and that Smith’s problems are the result of arthritis. The trial court agreed with that opinion and did not find that Smith had a meniscus tear that resulted from a new accident.